UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| SAMUEL R. LARGE, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|   v. | )   CIVIL NO. 1:02cv177 |
| | ) |
| MOBILE TOOL, INTERNATIONAL, INC. | ) |
| et al., | ) |
| | ) |
|     Defendants. | ) |

OPINION AND ORDER

This matter is before the court on a motion for summary judgment on Counts I and II of the third-party complaint, filed by the third-party plaintiffs, Mobile Tool International, Inc. and MTI Insulated Products, Inc. (collectively "Mobile Tool")[1], on May 8, 2006. The third-party defendant, Davis H. Elliot Co., Inc. ("Elliot")[2], filed its response on June 7, 2006. After receiving several extensions of time to file a reply brief, Mobile Tool ultimately declined to file a reply.

Also before the court is a motion for summary judgment filed by Elliot on April 18, 2006. Mobile Tool responded to the motion on May 22, 2006, to which Elliot replied on August

---

[1] The named defendants in this case are Mobile Tool International, Inc., MTI Insulated Products, Inc., TECO, Inc. and OCET, Inc. At the time the original complaint was filed in this case, the relationship between the defendants was alleged as follows: Mobile Tool was a Maryland corporation with its principal place of business in Colorado, MTI Insulated Products was an Indiana corporation with its principal place of business in Fort Wayne. TECO and OCET were combined or merged into Mobile Tool or MTI Insulated Products in or about 1998. MTI Insulated Products and TECO and/or OCET were operated as wholly-owned subsidiaries of Mobile Tool. Mobile Tool and/or MTI Insulated Products are alleged to be the successors to TECO and/or OCET.

[2] Davis H. Elliot Co., Inc. was the plaintiff's employer, and had a contractual lease relationship with TECO, which was subsequently acquired by Mobile Tool.

8, 2006.

For the following reasons, both motions for summary judgment will be denied

## Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  However, Rule 56(c) is not a requirement that the moving party negate his opponent's claim.  Fitzpatrick v. Catholic Bishop of Chicago, 916 F.2d 1254, 1256 (7th Cir. 1990).  Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  A scintilla of evidence in support of the non-moving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff."  Id.  In Re Matter of Wildman, 859 F.2d 553, 557 (7th Cir. 1988); Klein v. Ryan, 847 F.2d 368, 374 (7th Cir. 1988); Valentine v. Joliet Township High School District No. 204, 802 F.2d 981, 986 (7th Cir. 1986). No genuine issue for trial exists "where the record as a whole could not lead a rational trier of fact to find for the nonmoving party."  Juarez v. Ameritech Mobile Communications, Inc., 957 F.2d 317, 322 (7th Cir. 1992)(quoting Matsushita Electric Industrial Co., Ltd. v. Zenith Radio

2

Corp., 475 U.S. 574, 586 (1986)).

Initially, Rule 56 requires the moving party to inform the court of the basis for the motion, and to identify those portions of the "pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, which demonstrate the absence of a genuine issue of material fact, Celotex, 477 U.S. at 323. The non-moving party may oppose the motion with any of the evidentiary materials listed in Rule 56(c), but reliance on the pleadings alone is not sufficient to withstand summary judgment. Goka v. Bobbitt, 862 F.2d 646, 649 (7th Cir. 1988); Guenin v. Sendra Corp., 700 F. Supp. 973, 974 (N.D. Ind. 1988); Posey v. Skyline Corp., 702 F.2d 102, 105 (7th Cir.), cert. denied, 464 U.S. 960 (1983).

So that the district court may readily determine whether genuine issues of material fact exist, under Local Rule 56.1, the moving party is obligated to file with the court a "Statement of Material Facts" supported by appropriate citation to the record to which the moving party contends no genuine issues exist. In addition, the non-movant is obligated to file with the court a "Statement of Genuine Issues" supported by appropriate citation to the record outlining all material facts to which the non-movant contends exist that must be litigated. See, Waldridge v. American Hoechst Corp. et al., 24 F.3d 918 (7th Cir. 1994). In ruling on a summary judgment motion the court accepts as true the non-moving party's evidence, draws all legitimate inferences in favor of the non-moving party, and does not weigh the evidence or the credibility of witnesses. Anderson, 477 U.S. at 249-251, 106 S.Ct. at 2511. Furthermore, in determining the motion for summary judgment, the court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the "Statement of Genuine Issues" filed in opposition to

the motion. L.R. 56.1

Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. Anderson, 477 U.S. at 248. Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. Id. The issue of fact must be genuine. Fed. R. Civ. P. 56(c), (e). To establish a genuine issue of fact, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586; First National Bank of Cicero v. Lewco Securities Corp., 860 F.2d 1407, 1411 (7th Cir. 1988). The non-moving party must come forward with specific facts showing that there is a genuine issue for trial. Id. A summary judgment determination is essentially an inquiry as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-252. Finally, the court notes that, "[i]t is a gratuitous cruelty to parties and their witnesses to put them through the emotional ordeal of a trial when the outcome is foreordained" and in such cases summary judgment is appropriate. Mason v. Continental Illinois Nat'l Bank, 704 F.2d 361, 367 (7th Cir. 1983).

Discussion

The following factual background is pertinent to the pending motions. Elliot is a Virginia corporation that owns, leases, or rents over 150 bucket trucks across the United States at any given time for purposes of constructing and repairing electrical transmission and distribution lines. On May 17, 1996, Elliot entered into a Lease Agreement (the "Lease") with Defendant TECO, Inc. ("TECO") for the lease of a certain aerial lift device (the "Leased Unit"). According to the Complaint, the Leased Unit was designed and manufactured by Mobile Tool

and/or its subsidiaries, one of which is TECO.

The Lease was negotiated via telephone between representatives of TECO and its headquarters in Indiana and representatives of Elliot at its principal place of business in Virginia, and the Lease was sent to, and signed by, Elliot in Virginia. The monthly invoices for the Leased United were mailed to, and paid from, Davis Elliot's Virginia office. The Leased Unit was transferred to Virginia, used in Virginia, and maintained and stored in Virginia during the period of its use.

In 1999, Mobile Tool acquired certain assets of TECO pursuant to an Asset Purchase Agreement. One of the assets acquired was the Lease previously executed between TECO and Elliot for the Leased Unit. The purchase of the Lease made Mobile Tool the new lessor of the Leased Unit and therefore entitled to the benefits of the Lease. One such benefit includes the indemnification and duty to defend provision contained within the Terms and Conditions of the Lease. Under the Lease, Elliot agreed to:

[R]elease, indemnify and hold [Mobile Tool] harmless from and against:

> (a) Any and all liability, loss, damage, expense, causes of action, suits, claims or judgments arising from injury to person or property resulting from or based upon the actual or alleged use, operation, delivery, or transportation of the Vehicle or its location or condition, and shall at its own cost and expense, defend any and all such suits which may be brought against [Mobile Tool], either alone or in conjunction with others upon any such liability or claims and shall pay and discharge any and all judgments and fines that may be recovered against [Mobile Tool] in any such action or actions; provided, however, that [Mobile Tool] shall give [Elliot] written notice of any such claim or demand.
>
> (b) Any and all losses, damages, costs and expenses incurred by [Mobile Tool] or [its] insurance agency because of (1) injury or damage sustained by any occupant of said Vehicle, including without limitation [Elliot], his employees, agents, or

5

representatives, or (2) loss or damage to cargo or property owned by or in the possession of [Elliot], his employees, agents, or representatives.

(c) All loss, damage, cost and expense resulting from [Elliot's] violation of any term of this agreement or breach of [Elliot's] warranties as expressed herein.

(d) Loss or damage to the Vehicle during the rental period for any reason.

(Lease terms and Conditions, Section 3, Exhibit B to Third-Party Complaint).

The general Lease Terms and Conditions were further supplemented by monthly invoices supplied directly from Mobile Tool to Elliot, which include Terms and Conditions specifically tailored to the Leased Unit at issue. These invoices contain an indemnification clause that provides as follows:

> Buyer acknowledges that serious injury or death may occur to persons using or near personnel lifting units which are improperly operated or maintained.
>
> Buyer by accepting delivery of a serviced unit and/or parts supplied hereunder, thereby acknowledges possession of all service and maintenance manuals for that unit or units. Buyer expressly warrants, covenants and agrees that (I) all persons using or servicing the unit or units described therein shall be adequately and thoroughly instructed in the proper use and maintenance of said units and shall be provided with copies of service and maintenance manuals, which shall be readily accessible to said persons at all times, one copy of which shall be kept with the unit, and (ii) the units will at all times be used as directed by MTI in the manuals or elsewhere. Buyers shall require that the agreement in the preceding sentence shall be included in any agreement for the sale or use by other persons of any one or all of the units and/or parts described in this instrument, which agreement shall be written for the benefit of Buyer and MTI alike.
>
> MTI shall in no way be liable for any losses, costs, forfeiture, or damages including loss of profits, liability of Buyer to its customer

6

>or third persons, liability of MTI to its customers, employees or third-persons and incidental or consequential damages whether direct or indirect arising from or contributed to by the failure of Buyer to comply with the requirements of the preceding grammatical paragraph, unless due solely to the fault or negligence of MTI, even though there may also have been some contribution thereto by fault or negligence of MTI, its agents, employees and contractor, and Buyer agrees to hold MTI harmless and indemnify MTI from any and all claims or causes of action, damages, judgments or from whatever other causes, arising in connection with the use or maintenance of the units or any of them and arising from or contributed by the failure of Buyer to comply adequately with the terms of the preceding grammatical paragraph.

(Invoice Terms and Conditions, Exhibit 3 to Response to Motion to Dismiss).

On June 19, 2000, Large, who was an employee of Elliot, was seriously injured when, during the use and operation of the Leased Unit in Virginia, the Leased Unit came into contact with electric lines he was in the process of repairing.  As a result of his injuries, Large instituted an action against Mobile Tool and others, for negligent design and/or manufacture, product liability, and breach of express and implied warranties.

On April 7, 2004, Mobile Tool filed a third-party complaint against Elliot, seeking defense and indemnification for the allegations contained in Large's complaint, breach of contract for failure to defend Mobile Tool against Large's allegations, and breach of contract for failure to provide insurance to TECO.

Elliot filed a motion to dismiss the third-party complaint.  This court issued an order dated February 22, 2005 denying Elliot's motion to dismiss.  In this order, a choice of law analysis was conducted and it was held that Virginia law applied to the claims raised by Mobile Tool in Counts I and II of its third-party complaint. (Order at 10). This court further rejected Elliot's argument that Large's claims do not fall within the terms of the lease.  (Order at 9).

On April 15, 2005, Mobile Tool filed a motion for summary judgment on Counts I and II based primarily on its prior arguments and on the February 22, 2005 Order.  Elliot responded that the motion was premature and that there were fact issues that required discovery.  This court then denied  Mobile Tool's motion as premature pending more discovery.  Discovery has now concluded and Mobile Tool requests that its motion for summary judgment on Counts I and II of the third-party complaint be granted.  Elliot, in its own motion, seeks summary judgment on its entire third-party complaint.

In support of its motion for summary judgment, Mobile Tool maintains that the indemnification provision is clear and unambiguous, and that Large's amended complaint falls within the indemnification provision.  Mobile Tool notes that Elliot identified six factual issues that it claimed required further discovery, and argues that none of these issues remain.  The six identified factual issues were: (1) whether the injury to Large resulted from or was based upon the actual or alleged use of the bucket truck; (2) whether the injury to Large resulted from or was based upon the actual or alleged operation of the bucket truck; (3) whether the injury to Large resulted from or was based upon the actual or alleged delivery of the bucket truck; (4) whether the injury to Large resulted from or was based upon the actual or alleged transportation of the bucket truck; (5) whether the injury to Large was due solely to the fault or negligence of Mobile Tool, solely to the fault or negligence of Elliot, solely to the fault or negligence of Large, or a combination percentage of any of the above; and (6) the extent to which, through lay and expert witness testimony and investigation, it has not yet been determined the extent to which Large's injuries resulted from or were based upon the claims in his complaint, and not resulting from or based upon the actual or alleged use, operation, delivery, or transportation of the bucket truck.

With respect to these issues, Mobile Tool claims that the testimony of Elliot's Rule 30(b)(6) designees is controlling and dispositive. Mobile Tool points out that Elliot admitted that Large was using the aerial lift at the time of the accident, was operating the bucket at the time of the accident, and that its investigation concluded that the sole cause of the accident was operator error. Mobile Tool further points out that the evidence shows that Elliot accepted the monthly invoice which provides that Elliot "by accepting delivery of a serviced unit and/or parts supplied hereunder, thereby acknowledges possession of all service and maintenance manuals for that unit" and copies of the service and maintenance manuals "shall be readily accessible to said persons [using or servicing the unit or units] at all times, one copy of which shall be kept with the unit."  Mobile Tool next asserts that Elliot has no corporate knowledge to dispute the evidence that the TECO V5-A aerial lift was initially shipped with an end cap. Finally, Mobile Tool points out that Elliot procured insurance through Royal Insurance naming TECO as an additional insured on this bucket truck because it was required by the Lease Agreement to do so.

Mobile Tool argues that, with the above admissions, the indemnification provision is obviously triggered. Elliot, however, argues that the indemnification clause is inapplicable in the present case because the damages for which Large seeks recovery did not "[arise] in connection with the use or maintenance of the units." This court has already rejected this argument in its order denying Elliot's motion to dismiss the third-party complaint.(Feb. 22, 2005 Order at 8-9). As this court noted, Large's complaint specifically alleges that his injuries arose out of the use or operation of the Leased Unit. Therefore, the complaint clearly falls within the Terms and Conditions of the contract which requires Elliot to defend and indemnify Mobile Tool for any and all liability arising out of the use or operation of the Leased Unit.

9

Sidestepping the issue of whether the indemnification provision has been triggered, Elliot argues that the indemnification clause at issue is violative of public policy. Elliot notes that Mobile Tool has asserted, and this court has held, that Virginia law applies to the interpretation of the indemnification agreement in this case. Elliot contends that Virginia law on indemnification agreements is well established in its holding that unilateral agreements indemnifying an entity for personal injuries arising out of that entity's own negligence violate the public policy of the State of Virginia. See Green v. Sauder Mouldings, Inc., 345 F. Supp. 2d 610, 612 (E.D. Va. 2004).

In Green, the district court examined an indemnification provision, and held the provision invalid because "it was not bargained for or negotiated, and represented[ed] more of a unilateral release provision". Id. In Green, the undisputed testimony before the court was that the defendant's low-level employee, a receiving clerk, signed a lease agreement but was never told that the reverse side of the agreement contained an indemnity provision. Id. In the present case, Mobile Tool maintains that a "sophisticated officer" of Elliot signed the lease agreement and that Elliot was specifically informed that it was agreeing to indemnify Mobile Tool, even if a personal injury was caused by Mobile Tool's negligence or due to strict product liability. Elliot continues to deny that it was ever expressly made aware that it was contracting for Mobile Tool's negligence or strict product liability. Elliot sets forth the following statement of facts in support of its position:

1. In May of 1996, Elliot leased the bucket truck in question, Unit 4068, Contract Number 2208 (hereinafter "the Bucket Truck"), from Teco Equipment Leasing Company of Fort Wayne, Indiana (hereinafter "the Lease") via an oral "handshake" agreement. The Lease was a

month-to-month lease with automatic renewal and monthly payment by Elliot pursuant to invoice. *See Deposition of Glenn Thomsen of October 8, 2004, attached hereto as Exhibit A, 23:13-21; 27:3-10; 33:20-34:8.*

2. The Lease was negotiated by both telephone and in person. Elliot, through its employee Richard Scott Haskins, spoke via telephone from its offices in Virginia with Tim Dammeyer in Fort Wayne, Indiana, Teco Equipment Leasing Company's Leasing Manager. Mr. Haskins also met with Glenn "Bubba" Haroldson, Teco Equipment Leasing Company's Sales Representative, by phone and in Virginia. *Ex. A, 38:7-19.*

3. In conjunction with the Lease, and after delivery, Teco Equipment Leasing Company forwarded certain documents to Elliot regarding the Bucket Truck. These documents included an "Equipment Rental Contract," a "Terms and Conditions" page, and an "Insurance Requirements" page. *See Teco Contract, Terms and Conditions Page, and Insurance Requirements Page, Exhibit B. See also Ex. A, 33:20-34:8; 36:18-37:1.*

4. Defense and indemnification of Teco Equipment Leasing Company for its own strict liability, for Teco Equipment Leasing Company's own negligence with regard to manufacture and design, or for Teco Equipment Leasing Company's own breach of warranty, was never the subject of any negotiation or conversation regarding the Lease. *Ex. A, 33:20-34:15; 36:18-37:1; 69:4-15.*

5. At no time during the negotiation of the Lease, did Mr. Dammeyer or Mr. Haroldson discuss any indemnification clause or duty with Mr. Haskins of Elliot with regard to the Bucket Truck. *Ex. A, 33:20-34:15; 36:18-37:1; 69:4-15.*

6. The documents associated with the Lease and the Bucket Truck would not have

11

been read by Mr. Haskins prior to signing. Mr. Haskins would have merely signed and noted the rental price. In fact, the documents upon which Mobil Tool bases its Third–Party Claims against Elliot would not have been seen by Mr. Haskins prior to entering into the Lease and receiving the Bucket Truck. *Ex. A, 71:1-17.*

7. At no time during the negotiation of the Lease, the signing of any documents regarding the Lease, during the Lease of the Bucket Truck, nor after the Lease of the Bucket Truck, up until the filing of the Third-Party Complaint, did any representative of Elliot understand or believe that it would held to defend, indemnify, and hold harmless Teco Equipment Leasing Company for Teco Equipment Leasing Company's own negligence, strict liability, or breach of warranty. *Ex. A, 33:20-34:15; 36:18-37:1; 69:4-15; 71:1-17.*

8. In 1999, Mobil Tool International, Inc. and/or MTI Insulated Products, Inc. purchased the assets of Teco, Inc. pursuant to as Asset Purchase Agreement. The assets purchased allegedly included the Lease between Teco Equipment Leasing Company and Elliot. *See Mobil Tool's Third-Party Complaint, attached hereto as Exhibit C, paragraph 5.*

9. As a result of the its purchase of the assets of Teco, Inc., Mobil Tool International, Inc. and/or MTI Insulated Products, Inc. took over the Lease, began forwarding invoices for monthly payments for the Lease, and accepted payments under the Lease. *See MTI Insulated Products, Inc. Lease Invoice, attached hereto as Exhibit D. See also Ex. C. See also Ex. A, 43:17-44:20.*

10. The reverse of the lease invoice states, in pertinent part, that:

> The contract is formed by MTI's acceptance of Buyer's order to
> MTI at MTI's Fort Wayne, Indiana, office the terms of which

> contract are evidenced by this detailed acknowledgement, which
> shall control over any conflicting provisions in other documents,
> unless the terms of this acknowledgement are expressly varied by
> MTI.

*See Ex. D, paragraph 12.*

    11. The invoice for the Lease period during which Large was injured also states, in pertinent part, on its reverse side:

> Buyer agrees to hold MTI harmless and indemnify MTI from any
> and all claims or causes of action, damages, judgments or from
> whatever other cause, arising in connection with the use or
> maintenance of the units or any of them and arising from or
> contributed by the failure of Buyer to comply adequately with the
> terms of the preceding grammatical paragraph.

*See Ex. D, paragraph 11.*

    12. Due to the Asset Purchase of Teco, Inc., the verbal negotiation of the Lease without reference to indemnification, and the issuance of the Lease invoice for the term during the Occurrence, either the Lease only consisted of verbal terms or consisted only of the terms as outlined on the MTI Insulated Products, Inc. lease invoice and its reverse. *Ex. D.* In either scenario, the Lease of the Bucket Truck did not consist of the indemnification clause as outlined in the Terms and Conditions and relied upon by Mobile Tool in its Third-Party Complaint. *Ex. B.*

    In response, Mobile Tool claims that Elliot has made several "misstatements". Mobile Tool objects to Elliot's attempt to portray itself as an unsophisticated entity duped by Mobile Tool, and points out that the rental agreement was not a single, isolated encounter. Rather, Elliot repeatedly entered into long term lease agreements with Mobile Tool and all of those agreements contain similar indemnification, defense, and insurance provisions. Elliot also received monthly invoices on rentals from Mobile Tool, which also contain the same indemnification, defense, and

13

insurance provisions. Mobile Tool argues that if Elliot did not want to contractually indemnify Mobile Tool, then it could have purchased aerial lifts rather than entered into leases, and in fact did purchase some aerial lifts from Mobile Tool.

Clearly, this court cannot determine, as a matter of law, whether Elliot was aware of the indemnification provision and negotiated for such a provision. Elliot denies this, yet Mobile Tool insists that a "sophisticated officer" of Elliot signed off on the provision and was fully aware of the same. As this is obviously a hotly disputed material issue of fact, summary judgment may not be granted in favor of either party on Counts I and II of the third-party complaint.

As an alternative basis for summary judgment, Elliot argues that the indemnification clause upon which Mobile Tool seeks indemnification does not apply because the Lease Invoice for the bucket truck, not the Terms and Conditions in the Lease Agreement, contains the express provisions with regard to defense and indemnification. Elliot points out that the Lease Invoice states that it encompasses the entire contract between Mobile Tool and Elliot for the lease of the bucket truck and that the terms on the lease invoice "control over any conflicting provisions in other documents." Elliot maintains that the indemnification clause in the Terms and Conditions page is in conflict with that on Lease Invoice in that the Terms and Conditions could be held to be much more broad, even unconscionably broad, due to the fact that it seeks blanket indemnification for any and all losses or damages while the lease invoice provision limits indemnification to those arising in connection with the use or maintenance of the units.

In response, Mobile Tool claims that Elliot is arguing hypothetical scenarios and that there is no evidence (or citation to case authority) that the indemnification clause in the Terms

14

and Conditions page is unconscionably broad.  Mobile Tool also disputes that the two documents are in any way conflicting and, moreover, Elliot's Rule 30(b) witness represented that the original May, 1996 Lease Agreement was the document that Elliot "signed at the time we took delivery of the truck and would have been in force or would have applied during the time that we had the vehicle on month to month rent." (Thomsen Oct. 8, 2004 Dep. at 57).  Clearly, it is undisputed that the Lease (along with its Terms and Conditions) continued to apply even though the Lease was supplemented by the monthly invoices. Accordingly, Elliot's request for summary judgment on this basis will be denied.

Elliot has requested summary judgment on Count III of the third-party complaint, which asserts that Elliot is liable for failure to provide insurance as mandated by the Lease Terms and Conditions.   Elliot claims that it is undisputed that it secured and maintained liability and automobile insurance in the requisite amounts, and that it named Teco Equipment Leasing Company as an additional insured on its policy.  Elliot states that it secured and maintained general liability insurance with minimum limits of $1,000,000, naming Teco Equipment Leasing Company as an additional insured for units rented.  Elliot argues that Mobile Tool has acknowledged the presence of such insurance and thus summary judgment should be granted in its favor.

In response, Mobile Tool states that it will agree to dismiss the failure to obtain insurance claim when Elliot confirms that the Royal Insurance Policy is triggered and applicable without reservation to insure Mobile Tool under the contractual indemnification and defense provision. Elliot, however, insists that it has complied with any and all provisions of any contractual requirement to provide insurance to Teco Equipment Leasing Company and to name Teco

15

Equipment Leasing Company as an additional insured under its policy. Elliot argues that evidence of the triggering of Elliot's insurance and of the absence of a reservation of rights is irrelevant to Elliot's right to summary judgment on Mobile Tools third claim for relief.

Neither party has provided much in the way of argument on this point. Neither party has cited to any cases, or even set forth the contract language in its briefs. Accordingly, the motion for summary judgment will be denied as to Count III of the third-party complaint.

## Conclusion

On the basis of the foregoing, Mobile Tools motion for summary judgment on Counts I and II are hereby DENIED. Further, Elliot's motion for summary judgment on the entire third-party complaint is also hereby DENIED.

Entered: December 15, 2006.

s/ William C. Lee
William C. Lee, Judge
United States District Court