UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| SAMUEL R. LARGE, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|   v. | )   CIVIL NO. 1:02cv177 |
| | ) |
| MOBILE TOOL INTERNATIONAL, INC, et al., | ) |
| | ) |
|     Defendants. | ) |
| _____ | ) |
| | ) |
| MOBILE TOOL INTERNATIONAL, INC., et al., | ) |
| | ) |
|     Third-Party Plaintiffs, | ) |
| | ) |
|   v. | ) |
| | ) |
| DAVIS H. ELLIOT COMPANY, INC., | ) |
| | ) |
|     Third-Party Defendant. | ) |

OPINION AND ORDER

This matter is before the court on a motion for summary judgment filed by the defendants, Mobile Tool International, Inc., MTI Insulated products, Inc., TECO, Inc., and OCET, Inc. (the "Mobile Tool Defendants")[1], on May 8, 2006. The plaintiff, Samuel R. Large

---

[1] The named defendants in this case are Mobile Tool International, Inc., MTI Insulated Products, Inc., TECO, Inc. and OCET, Inc. At the time the original complaint was filed in this case, the relationship between the defendants was alleged as follows: Mobile Tool was a Delaware corporation with its principal place of business in Colorado, MTI Insulated Products was an Indiana corporation with its principal place of business in Fort Wayne. TECO and OCET were combined or merged into Mobile Tool or MTI Insulated Products in or about 1998. MTI Insulated Products and TECO and/or OCET were operated as wholly-owned subsidiaries of Mobile Tool. Mobile Tool and/or MTI Insulated Products are alleged to be the successors to TECO and/or OCET.

("Large"), filed his response on June 8, 2006, to which the Mobile Tool Defendants replied on June 22, 2006.

Also before the court is a motion for summary judgment filed by third-party defendant, Davis H. Elliot ("Elliot")[2], on May 8, 2006. The Mobile Tool defendants filed their response on November 14, 2006, to which Elliot replied on November 29, 2006.

For the following reasons, the Mobile Tool Defendants' motion for summary judgment will be denied in part and granted in part, and Elliot's motion for summary judgment will be taken under further advisement.

## Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). However, Rule 56(c) is not a requirement that the moving party negate his opponent's claim. Fitzpatrick v. Catholic Bishop of Chicago, 916 F.2d 1254, 1256 (7th Cir. 1990). Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion. Anderson v. Liberty

---

[2] Davis H. Elliot Co., Inc. was the plaintiff's employer, and had a contractual lease relationship with TECO, which was subsequently acquired by Mobile Tool.

Lobby, Inc., 477 U.S. 242, 250 (1986).  A scintilla of evidence in support of the non-moving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff."  Id.  In Re Matter of Wildman, 859 F.2d 553, 557 (7th Cir. 1988); Klein v. Ryan, 847 F.2d 368, 374 (7th Cir. 1988); Valentine v. Joliet Township High School District No. 204, 802 F.2d 981, 986 (7th Cir. 1986).  No genuine issue for trial exists "where the record as a whole could not lead a rational trier of fact to find for the nonmoving party."  Juarez v. Ameritech Mobile Communications, Inc., 957 F.2d 317, 322 (7th Cir. 1992)(quoting Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).

Initially, Rule 56 requires the moving party to inform the court of the basis for the motion, and to identify those portions of the "pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, which demonstrate the absence of a genuine issue of material fact, Celotex, 477 U.S. at 323.  The non-moving party may oppose the motion with any of the evidentiary materials listed in Rule 56(c), but reliance on the pleadings alone is not sufficient to withstand summary judgment.  Goka v. Bobbitt, 862 F.2d 646, 649 (7th Cir. 1988); Guenin v. Sendra Corp., 700 F. Supp. 973, 974 (N.D. Ind. 1988); Posey v. Skyline Corp., 702 F.2d 102, 105 (7th Cir.), cert. denied, 464 U.S. 960 (1983).

So that the district court may readily determine whether genuine issues of material fact exist, under Local Rule 56.1, the moving party is obligated to file with the court a "Statement of Material Facts" supported by appropriate citation to the record to which the moving party contends no genuine issues exist.  In addition, the non-movant is obligated to file with the court a "Statement of Genuine Issues" supported by appropriate citation to the record outlining all

3

material facts to which the non-movant contends exist that must be litigated. See, Waldridge v. American Hoechst Corp. et al., 24 F.3d 918 (7th Cir. 1994). In ruling on a summary judgment motion the court accepts as true the non-moving party's evidence, draws all legitimate inferences in favor of the non-moving party, and does not weigh the evidence or the credibility of witnesses. Anderson, 477 U.S. at 249-251, 106 S.Ct. at 2511. Furthermore, in determining the motion for summary judgment, the court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the "Statement of Genuine Issues" filed in opposition to the motion. L.R. 56.1

Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. Anderson, 477 U.S. at 248. Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. Id. The issue of fact must be genuine. Fed. R. Civ. P. 56(c), (e). To establish a genuine issue of fact, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586; First National Bank of Cicero v. Lewco Securities Corp., 860 F.2d 1407, 1411 (7th Cir. 1988). The non-moving party must come forward with specific facts showing that there is a genuine issue for trial. Id. A summary judgment determination is essentially an inquiry as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-252. Finally, the court notes that, "[i]t is a gratuitous cruelty to parties and their witnesses to put them through the emotional ordeal of a trial when the outcome is foreordained" and in such cases summary judgment is appropriate. Mason v.

Continental Illinois Nat'l Bank, 704 F.2d 361, 367 (7th Cir. 1983).

## Discussion

On June 19, 2000, Large, who was an employee of Elliot, was seriously injured when, during the use and operation of a bucket truck, the bucket came into contact with electric lines he was in the process of repairing.  As a result of his injuries, Large instituted an action against Mobile Tool and others, for negligent design and/or manufacture, product liability, and breach of express and implied warranties (Counts I - IV).  Large later added a claim for spoliation of evidence (Count VI).

On April 7, 2004, Mobile Tool filed a third-party complaint against Elliot, seeking defense and indemnification for the allegations contained in Large's complaint, breach of contract for failure to defend Mobile Tool against Large's allegations, and breach of contract for failure to provide insurance to TECO.

The Mobile Tool Defendants have first requested summary judgment on Counts I-V of Large's complaint.  The Mobile Tool Defendants assert that Large was contributorily negligent because he failed to maintain statutory and work rule clearance between the aerial lift and the energized power lines, that Large failed to use rubber insulating hoses in the area where the boom of the aerial lift contacted the energized power lines, that Large failed to read and follow the warnings on the aerial lift regarding clearance and protective equipment, and that Large failed to read the operating instructions which contained additional warnings regarding electrocution hazards, clearance and protective equipment.  Mobile Tool concludes that Large's own negligence caused the June 19, 2000 accident.  Mobile Tool also contends that the aerial lift was materially altered prior to the accident.

5

A preliminary issue which must be decided before reaching the substantive claims concerns choice of law. Mobile Tool argues that under Indiana's traditional choice of law rules, Virginia's substantive law controls because the alleged tort occurred in Virginia, where the accident occurred. Large, however, insists that this case is governed by Indiana law.

In Hubbard Manufacturing, Inc. v. Greeson, 515 .E.2d 1071 (Ind. 1987), the Indiana Supreme Court modified the strict lex loci doctrine to consider factors other than the place of the occurrence of the harm. Hubbard holds that in cases where the "place of the tort bears little connection to the legal action, [the] Court will permit the consideration of other factors such as : (1) the place where the conduct causing the injury occurred; (2) the residence or place of the parties; and (3) the place where the relationship is centered." Id. at 1073-74.

Mobile Tool states that it is a Delaware corporation, however its subsidiary, MTI Insulated Products, Inc. is an Indiana corporation. Large is a resident of North Carolina and commuted to work in Virginia. The accident occurred along a roadside in Virginia. Davis Elliot, Large's employer, maintains its corporate headquarters in Virginia. The aerial lift which is the subject of this lawsuit was designed (and apparently manufactured) in Indiana. After Large's accident, Mobile Tool called the truck back to Fort Wayne, Indiana for evaluation and re-conditioning, and it was apparently in Fort Wayne where parts of the lift were scrapped.

It is clear that Virginia does not have a significant interest in this case. Although the accident occurred there, the accident was not caused by any defect in Virginia's infrastructure or as a result of a violation of Virginia law. This case has evolved to become about much more than just the accident. This case is about the aerial lift, the design of the aerial lift, and the destruction of parts of the aerial lift. These are all Indiana issues, and thus the law of Indiana

will be applied.

Citing to Virginia law, the Mobile Tool Defendants argue that Large's claims are barred by his contributory negligence, assumption of risk, and negligence per se. The Mobile Tool Defendants contend that Large was partially at fault for the accident because he "intentionally positioned the boom within 8-12 inches of energized wires", he "failed to use rubber hoses to cover the energized wires", he "failed to read and abide by the warnings", and he "failed to report the missing end cap" and "used a materially altered aerial lift..." Under Virginia law, any contributory negligence by Large would bar any recovery. However, as Indiana law is at play here, the Mobile Tool Defendants' arguments are irrelevant. While the evidence may ultimately show that Large was contributorily negligent, this determination must be made by a jury[3]. Pursuant to Indiana law, Large would not be barred from recovery if he were found to be contributorily negligent.

The Mobile Tool Defendants also rely on Virginia's "inherently dangerous activities doctrine" as a bar to Large's claims. Again, as the court has determined that Indiana law applies, this argument is meritless. Likewise the Mobile Tool Defendants' claim that they are entitled to summary judgment by the application of Virginia's sophisticated user doctrine is mooted by the application of Indiana law.

The Mobile Tool Defendants next argue that they are entitled to summary judgment on Large's failure to warn claims because it has evidence that Large did not read the warnings and

---

[3] Notably this is true regardless of whether Virginia or Indiana law is applied. Although the defendants insist that no jury could find that Large was not at least one percent negligent, the record clearly shows that there are many factual disputes with respect to Large's alleged contributory negligence.

operating manual that accompanied the aerial lift.  Large, however, argues that material facts remain in dispute regarding the alleged failure to warn.  Large claims that the warning labels were insufficient because they failed to explain the nature of the harm, i.e., the labels warned of electric shock and did not warn of the high propensity of fire.  Large also contradicts Mobile Tool's evidence that he did not read the warnings.  Large has presented evidence that he did read the warnings on electrocution and also read portions of the manuals.  Large also received information in safety briefings and job briefings, but claims that he never once heard of the danger of hydraulic fire from test band contact.  Clearly, Large is correct that the sufficiency of the warning labels is a question for the jury.

Next, the Mobile Tool Defendants argue that they are entitled to summary judgment on Large's design claims because Large's experts have never designed an aerial lift.  The defendants fail to explain how this fact, even if true, would require that summary judgment be granted in their favor.   The defendants also present an anemic two-sentence argument in support of their assertion that they are entitled to summary judgment on Large's warranty claims.  The arguments are clearly insufficient.

In their reply brief, the Mobile Tool Defendants argue that Large's claims are barred because the lift was substantially altered post-manufacture.  However the defendants are relying on Virginia law, and thus their arguments are meritless.

The Mobile Tool Defendants also argue that they are entitled to summary judgment on Large's spoliation claim (Count VI).  Large acknowledges that the Indiana Supreme Court has held that Indiana does not recognize first-party intentional spoliation of evidence as an independent tort claim.  Gribben v. Wal-Mart Stores, Inc., 824 N.E.2d 349 (Ind. 2005).  Rather,

spoliation issues are to be dealt with via various sanctions, such as "ordering that designated facts be taken as established, prohibiting the introduction of evidence, dismissal of all or any part of an action, rendering a judgment by default against a disobedient party, and payment of reasonable expenses including attorney fees." Id. at 351.  Notably, Large has a sanctions motion pending before this court dealing with the spoliation issue.   As first-party spoliation is not a recognized claim in Indiana in a tort case such as the one between Large and the Mobile Tool Defendants, summary judgment will be granted in favor of the Mobile Tool Defendants on Count VI.

Finally, the Mobile Tool Defendants argue that they are entitled to summary judgment on Large's claim for future economic loss.  The defendants contend that Large's claim for future wage loss fails because he has not identified a forensic economist as an expert and has not identified any witness who will present admissible testimony regarding a present value calculation of his future economic loss.

Large has identified Mr. Peder Melberg, a vocational rehabilitation expert, who will testify on future economic loss.  The defendants assert that Mr. Melberg's opinion regarding future economic loss is based on complete hearsay and is without reliable factual foundation.  Further, Mr. Melberg has acknowledged that he did no present value calculations.

In response, Large states that Mr. Melberg's method for assessing Large's lost earnings involved conducting a comprehensive vocational interview and evaluation of Large in February 2006. (Melberg Dep. at 6).  This assessment included a diagnostic interview and testing, including an analysis of Large's "work and educational background, skills, interests, goal, capabilities." Id. at 14-15. Furthermore, he reviewed Large's medical treatment records,

9

rehabilitation records, W-2s and deposition testimony.  Id. at 10.  Mr. Melberg also interviewed former members of Large's work crew.    Large contends that this evidence satisfies his burden to show "causally-related damages", and that he is not required to reduce his lost wage claim to present value.  See Cella v. United States, 825 F. Supp. 1383, 1409 (N.D. Ind. 1992)("[although plaintiffs generally must prove damages by a reasonable certainty, the effect of applying a discount rate benefits defendants by reducing the dollar amount awarded."); Wingad v. John Deere & Co., 187 Wis.2d 441, 451 (1994)("The introduction of present value evidence, including the discount rate, reduces the plaintiff's award. . . . [a] defendant seeking reduction to present value of a sum awarded for loss of future earnings has the burden of going forward with evidence to enable the fact finder to make a rational decision on the award.").

As the record now stands, it appears that Large has presented sufficient evidence to meet his initial burden of showing "causally-related damages".  To the extent that this evidence is weak, the defendants are free to point that out to the jury.  To the extent this evidence is inadmissible in whole or in part, the defendants are free to file a motion in limine prior to trial. If the defendants wish a Daubert hearing on the issue of the qualifications of Mr. Melberg, they are free to make such a motion.  If the defendants desire present value calculations, the better reasoning is to require them to present such evidence.  This court has not found any Seventh Circuit law requiring the plaintiff to reduce to present value his own damage claim by submitting present value calculations.  Accordingly, the Mobile Tool Defendants' motion for summary judgment on the issue of economic damages will be denied.

The court will now address Elliot's motion for summary judgment on spoliation.  The Mobile Tool Defendants reiterate their argument that Indiana law does not allow an independent

10

claim for spoliation. Gribben v. Wal-Mart Stores, Inc., 824 N.E.2d 349, 355 (Ind. 2005). However, as Elliot points out, Gribben only applies to a situation wherein a plaintiff has brought a tort claim against a defendant and the defendant has negligently or intentionally destroyed or discarded evidence that is relevant to that action. In that situation, the plaintiff will not have a separate claim for spoliation of evidence because the plaintiff will already have existing claims against the defendant. Such a plaintiff does not need a separate spoliation claim to pursue an affirmative remedy because such a plaintiff can simply piggyback discovery sanctions and legal inferences that the destroyed evidence would have been damaging to the spoliating party. Elliot explains that its spoliation claim is not analogous to that in Gribben because Elliot is not attempting to add a spoliation claim to an existing tort claim. Rather, Mobile Tool has brought a contractual indemnification claim against Elliot and part of Elliot's defense is that the accident does not fall within the applicable indemnification language of the lease between Mobile Tool and Elliot and the injuries were directly and proximately caused by Mobile Tool's negligent design and manufacture. Elliot contends that Mobile Tool forced Elliot to file a claim for spoliation because as long as Mobile Tool plans to pursue its indemnification claim against Elliot, then Elliot is forced to defend itself by claiming that it was unfairly prejudiced by the discarding and or/destroying of the bucket truck. Thus, Elliot concludes that its spoliation claim is not a needless argument in addition to an existing tort claim. Rather, Elliot is defending itself from litigation commenced by Mobile Tool.

    This court agrees that even though the Indiana Supreme Court has not embraced a spoliation claim for a first-party plaintiff, there is nothing to suggest that such a claim is not a valid defense for a third-party defendant.

11

In support of its motion for summary judgment on spoliation, Elliot states that Mobile Tool did not seek Elliot's permission to remove or transport the aerial lift, and that after the aerial lift was placed in the sole possession of representatives of Mobile Tool and transported to Mobile Tool's facility, the aerial lift was discarded and/or sold by Mobile Tool, even though Mobile Tool knew or should have known of the pending and/or future likelihood of litigation.

In response, Mobile Tool states that Elliot authorized repairs on the aerial lift, that Elliot never requested that Mobile Tool preserve any portion of the boom, and that Elliot has failed to demonstrate any actual prejudice from the destruction of the aerial lift.

In reply, Elliot disputes that it directed in any way the manner and performance of the work on the aerial lift.  Elliot also disputes that even though an invoice resulted in Elliot's payment of repairs to the aerial lift, Elliot never <u>authorized</u> those repairs.   Elliot further argues that the work order for the repair of the aerial lift was not an authorization for discarding the lift. In fact, Elliot claims that since Mobile Tool owned the aerial lift (and merely leased it to Elliot), Elliot had no authority to request or approve the destruction of the lift.

Elliot also disputes that it was required to put Mobile Tool on notice that it should not destroy the aerial lift.  Rather, according to Elliot, Mobile Tool was well aware of the accident and knew fully of the potential pecuniary and liability implications of the bucket truck's involvement in the accident, such that the aerial lift should be preserved.

Elliot also states that as Mobile Tool has sued it for indemnification and has asked it to defend the product liability and breach of warranty counts levied against Mobile Tool, which counts focus on the disputed fact of whether the bucket truck was supplied with a boom end cap, it is common sense that it is prejudiced by its inability to examine the boom and end cap at issue.

The court notes that Large has filed a motion for sanctions based on the exact same spoliation issue. An evidentiary hearing was held on this motion on June 25, 2007, and further briefing is forthcoming. There are many facts that need to be sorted out with respect to the spoliation issue, and many questions raised by Elliot's present motion overlap those raised by the Large spoliation motion for sanctions. Thus, the court will hold Elliot's motion under advisement at this time.

## Conclusion

Based on the foregoing, the Mobile Tool Defendants' motion for summary judgment is hereby GRANTED with respect to Count VI (spoliation), but DENIED in all other respects.. Further, Elliot's motion for summary judgment on the issue of spoliation is hereby TAKEN UNDER ADVISEMENT.

Entered: July 27, 2007.

                                                s/ William C.  Lee
                                                William C. Lee, Judge
                                                United States District Court