UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| SAMUEL R. LARGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL NO.  1:02cv177 |
| | ) | |
| MOBILE TOOL INTERNATIONAL, INC., | ) | |
| MTI INSULATED PRODUCTS, INC., | ) | |
| TECO, INC., and OCET, INC., | ) | |
| | ) | |
| Defendants. | ) | |

OPINION AND ORDER

This matter is before the court on a Motion to Reconsider filed by the defendants,

(collectively referred to as "the Mobile Tool Defendants" or simply "Mobile Tool"), on January

25, 2008.  The plaintiff, Samuel R. Large ("Large"), filed his response on February 11, 2008, to

which Mobile Tool replied on February 25, 2008.  The court held a hearing on the motion on

March 19, 2008.  After carefully reviewing the entire record, the motion to reconsider is denied.

Discussion

On January 7, 2008, this court entered an order granting Large's motion for sanctions and

imposing specific sanctions upon Mobile Tool[1].  Mobile Tool now requests that the court

reconsider this order and withdraw the imposition of sanctions or, in the alternative, modify the

sanctions.[2]

---

[1]  The facts of this case have been reiterated in numerous Orders by this Court, and will
not be repeated in full here.   The Court's January 7, 2008 Order is in the record as Docket entry
274, and is available electronically via the Court's CM/ECF system.

[2]  Mobile Tool requests, alternatively, that the only sanctions imposed be a spoliation
instruction and the associated evidentiary inference.

In support of reconsideration, Mobile Tool first argues that this court incorrectly held that the "Harrelson memorandum" and information contained therein was wrongfully withheld from Large's counsel by Mobile Tool.  According to Mobile Tool, Large sought and obtained expedited discovery with respect to spoliation in April 2005 and, shortly thereafter, Mobile Tool disclosed both the existence and substance of the Harrelson memorandum.

However, the point the court was making in discussing the Harrelson  memorandum (pp. 4-5 of Order) was that due to the memorandum Mobile Tool knew, as early as September 20, 2002, the identity of key witnesses to the spoliation of parts of the boom. Yet, Mobile Tool neither objected to, sought an extension to, nor answered discovery served on Mobile Tool on February 26, 2004 and August 12, 2005, relating to the spoliation of the boom.  Likewise, Mobile Tool named no individuals in its Rule 26(a)(1)(A) disclosures.

Mobile Tool now relies on the fact that Magistrate Judge Cosbey ruled that the Harrelson memorandum was privileged.  (RBC June 8, 2006 Order).  Nevertheless, as Magistrate Judge Cosbey ruled, it was clear that Large was entitled to the facts contained in the Harrelson memo. There is no doubt that Large is correct in his assertion that "[t]he Harrelson Memo constituted a well-marked roadmap that both sides should have been able to use as a path to truth in this case. Mobile Tool sat on the map...."  (DE 287 at 5).

Mobile Tool further relies on the fact that, as evidenced by May 13, 2005 correspondence from Mobile Tool's counsel to Large's counsel, Mobile Tool offered to (1) stipulate to facts concerning the spoliation issue (2) produce the Harrelson memorandum to Large's counsel for inspection without waiving its claim of privilege, and (3) make Harrelson available for deposition to confirm the substance of the memorandum if necessary.

In response, Large first notes that if the correspondence was material then Mobile Tool should have put it in the record in 2007, during the briefing of Large's sanction motion. Large also claims that the letter is "nothing more than a brazen effort by Mobile Tool to bully Large into a baseless transaction." Large opines that Mobile Tool was trying to enter into a stipulation of non-waiver in exchange for the production of material that was already responsive to pending, but ignored, discovery. Large acknowledges that an accident investigation record like the Harrelson Memo may itself be work product, but correctly states that the facts and witnesses unearthed in the investigation are themselves fully discoverable. See, e.g., Clark Equip. Co. v. Lift Parts Mfg. Co., 1985 U.S.Dist. LEXIS 15457, at *19 (N.D. Ill. Oct 1, 1985)(holding that '[t]he attorney work product privilege does not preclude the disclosure of facts of the identity of witnesses or documents simply because their existence was discovered by counsel"). Large further points out that Mobile Tool's letter itself actually informed Large of nothing he really needed, and did not even name Harrelson but, rather, refers to him as "the individual who prepared the privileged memorandum." Mobile Tool's current arguments notwithstanding, the court finds that no error was made with respect to the court's recitation of the fact surrounding the Harrelson memo. It remains clear that Mobile Tool had information responsive to discovery, yet failed to answer the discovery or even file an objection.

Mobile Tool next states that "[t]he Court also apparently concluded that Mobile Tool hid documents from Plaintiff. (*See* Order, 5-7). This finding is error." At issue here is Mobile Tool's failure to respond to discovery which prompted a motion to compel by Large. Mobile Tool repeatedly contended that it had no control over certain witnesses or documents, due to the bankruptcy of Mobile Tool and the sale of assets to Altec. Large, however, discovered that the

bankruptcy documents completely contradicted Mobile Tool's position because the Asset Purchase Agreement stated that Mobile Tool records would be made "available for inspection and copying" with respect to "any" ongoing litigation.  At the hearing on March 19, 2008, Mobile Tool again contended that it had no obligation to turn over documents because it did not have "physical control" over the documents.   When the Court questioned counsel directly whether the Asset Purchase Agreement on its face gave him access to the documents, counsel acknowledged that he did have access but that "we did not want to pay the cost and time and the effort to go through a thousand boxes of documents to respond to discovery."

Mobile Tool has incorrectly characterized this court's factual findings.  This court did not find that Mobile Tool "hid" documents.  Rather, the court stated that Mobile Tool had access to documents responsive to discovery, yet failed to gain that access to the documents to properly respond to outstanding discovery.  This fact is totally uncontradicted in the record.  It was not until Large discovered the Asset Purchase Agreement and presented it to Magistrate Judge Cosbey in a motion to compel, that Mobile Tool, under direct court order, finally made any attempt to respond to outstanding discovery.

Mobile Tool next takes issue with the court's notation that Mobile Tool's responses were "thin and general" and that Mobile Tool "willfully elected" not to make certain discovery responses, even though it was under Court order to respond.  Mobile Tool does not explain how the court's characterization of its behavior is incorrect, but merely states that "Plaintiff's counsel never even filed a motion with Magistrate Judge Cosbey seeking more specific answers or responses..."   Yet, Mobile Tool does not deny that instead of providing specific answers to most questions it simply indicated in a fax that it was making available approximately 1,000 boxes of

documents in Colorado and Indiana as "Rule 33(d)" responses to Large's discovery.  Nor does

Mobile Tool deny that Large's Second Set of Interrogatories, No.7, directed Mobile Tool to

"[i]dentify all entities and people employed, retained or contracted by Mobile Tool that came

into contact with the Truck or any of its parts following the Accident."  Interrogatory No. 8

directed Mobile Tool to "[i]dentify the circumstances and people or entities involved therein

under which any part of the Truck was lost, misplaced, destroyed, discarded or disposed of by

Mobile Tool or its contractors following the accident."  Mobile Tool answered both

interrogatories by incorporating its response to Interrogatory No. 8.  However, Mobile Tool

<u>objected</u> to Interrogatory No. 8, both generally and specifically, and then did not identify any

individual involved in the scrapping by Mobile Tool of the re-built boom and parts.

       Rather than attempt to explain its own behavior, Mobile Tool repeatedly redirects the

focus onto others.  Thus, according to Mobile Tool, the court should not sanction its behavior

because <u>i.e.,</u> Large did not subpoena or communicate directly with the bankruptcy trustee, Large

only spent two days reviewing documents after Mobile Tool was required to pay $12,000 in past

warehouse storage charges to gain access to the documents, Magistrate Judge Cosbey never

ordered Mobile Tool to produce documents or conclude that Mobile Tool had failed to do so, but

only directed Mobile Tool to submit a written request to gain access to the documents, and Large

never filed a motion with Magistrate Judge Cosbey seeking more specific answers or responses.

After this court has gone to great lengths to permit Mobile Tool to fully explain its behavior,

Mobile Tool fails to accept any responsibility for its actions or provide any genuine

explanations.  Although Mobile Tool now claims that the court made erroneous factual findings

in its January 7, 2008 Order, at the March 19, 2008 hearing, Mobile Tool's counsel conceded

that it had the right to access the documents that were responsive to outstanding discovery, yet willfully failed to gain that access.

Next, Mobile Tool next claims that there is no evidence in the record to support this court's statement that "[i]n the fall of 2001 Mobile Tool demanded the boom back".  According to Mobile Tool  "Plaintiff's counsel simply asserts that Mobile Tool demanded the boom back because it gave inferential support to his allegation that Mobile Tool intentionally spoliated it; the Court accepted this statement as true."  Again, however, Mobile Tool does not deny that it brought the boom back to Indiana.  Rather, Mobile Tool cites to the depositions of Richard Scruggs of Davis Elliott and Steve Weikart of Mobile Tool for the proposition that they do not know how the boom got back to Indiana.  Nevertheless, as Large points out, the record is clear that Mobile Tool owned the truck and sent a driver to pick it up and transport it back to Indiana. Mobile Tool does not deny this fact.  In any event, the matter is not particularly relevant to any of the court's rulings in this case.  It is undisputed that Mobile Tool owned the truck and boom and transported them back to Indiana and stored them for some time before refurbishing and/or scrapping the various pieces.

Mobile Tool also claims that the court incorrectly stated in footnote one of the Order that work on the boom was performed by members of Weikert's crew comprised of Steve Haley, Justin Seitz and Bill Johnson.  Mobile Tool asserts that Weikert testified that he had no knowledge who actually performed the refurbishment work because his computer was stolen, and that Haley, Seitz and Johnson (who were members of his crew) may have done it. Nevertheless, the record is clear that the work on the boom was performed by members of Weikert's crew, and that Haley, Seitz and Johnson (among others) were members of Weikert's

crew.  Clearly, Mobile Tool's objection to the court's wording in footnote one is frivolous.

On page two of the January 7, 2008 Order, this court noted that "Mobile Tool investigated the accident within days of Large's injury.  Mobile Tool's Vice President of Engineering, Dave Grabner was apparently the head of the investigative team."   Mobile Tool objects to this wording and states that it did not conduct a formal investigation of Large's accident, nor did it ever assemble or assign an "investigative team".  Again, the purpose of Mobile Tool's objection is unclear.  Mobile Tool acknowledges that Grabner went to Virginia after the accident in 2000, and made technical notes at the scene about the Unit 4068 fire. Whether the investigation was considered a formal or informal investigation by Mobile Tool is immaterial to the court's analysis of the issues in this case.  The point is that Grabner went to the scene, took notes, and produced the notes to Large.

Mobile Tool also takes issue with the court's finding that it had a legal duty to preserve the boom[3].  Mobile Tool contends that no sanctionable spoliation occurred because the "repair" of the boom occurred before Mobile Tool had a duty to preserve the boom.  Mobile Tool argues that the court did not properly consider Gribben v. Wal-mart Stores, Inc., 824 N.E. 2d 349 (Ind. 2005) and Glotzbach v. Froman, 854 N.E.2d 337 (Ind. 2006).  Mobile Tool claims that pursuant to Glotzbach, even though it owned the boom, and may have known of its relevance to litigation,

---

[3]  Mobile Tool also argues that there was no order by this court to preserve the boom, and that it is undisputed that the boom was repaired and refurbished before suit was ever filed in this case and before either Large or Davis Elliot requested preservation of any potential evidence.  In its January 7, 2008 Order, this court referred to the fact that Mobile Tool had a legal duty to preserve the boom and had actual orders to preserve it as evidence.  (Order at 20).  As a point of clarification, this court was not referring to a court order to preserve the boom.  Rather, this court was referring to orders within the Mobile Tool office to other employees that the unit and boom were to be safeguarded and were specifically being preserved as evidence in the investigation of the accident.  (Order at p. 3, citing to Harrelson Memo, and Hess affidavit.)

it did not have a duty to maintain the evidence. Mobile Tool further relies on Murphy v. Target Products, 580 N.E.2d 687 (Ind. App. 1991), for the proposition that there is no common law duty in Indiana to preserve potential evidence.

This court agrees with Mobile Tool that "[m]ere ownership of potential evidence, even with knowledge of its relevance to litigation, does not suffice to establish a duty to maintain such evidence." Glotzbach 854 N.E.2d at 341. Glotzbach was primarily concerned with the duty of an employer to preserve evidence following an employee's accident. The Indiana Supreme Court held that:

> an employer will virtually always be aware of an injury occurring in the workplace. If that knowledge were sufficient to establish a special relationship, the practical effect would be that an employer always has a duty to preserve evidence on behalf of its employee for use in potential litigation against third parties. This would directly conflict with Murphy as well as the law in most other states that have addressed the specific issue of a third-party spoliation claim by an employee against an employer based on evidence relevant to an industrial accident covered by worker's compensation.

854 N.E. 2d at 340. This holding has no application to the present case. Mobile Tool is a manufacturer, not an employer. Moreover, Mobile Tool is the defendant in this case and not a third-party. Additionally, it is clear that in Glotzbach, the Court "refus[ed] to recognize an independent cause of action under the circumstances presented by this case." Id. at 339 (emphasis added).

A complete reading of Glotzbach reveals that the Court has not abandoned the rule that courts should balance the relationship between the parties, determine the reasonable foreseeability of harm to the person injured, and public policy concerns. Id. These factors support a determination that Mobile Tool had a duty to preserve the evidence. Additionally, as this court held in its order granting sanctions, the evidence in this case shows that Mobile Tool

8

knew, at the upper corporate levels, that the boom was evidence and that an investigation was ongoing.  The evidence further shows that Mobile Tool intentionally scrapped the evidence, even after the person ordered to do the scrapping questioned the wisdom of the decision.  (See Order at 3-4, citing to the Harrelson Memo, Affidavit of Christopher Hess, and Weikart's deposition).

Mobile Tool's reliance on Gaskin v. Sharp Electronics Corp., 74 Fed R. Evid. S. (N.D. Ind. 2007), is misplaced.  In Gaskin, the defendant argued that certain expert testimony should be barred as a sanction for Plaintiff's spoliation of the fire scene and television fire remains.  The Plaintiff admitted that they removed the television remains from the scene the day after the fire, as Gaskin was told by a fire investigator to remove the television and that he placed it in an empty box and put it in his garage.  The defendant was not put on notice of the fire until after the fire scene was completely destroyed and thus argued that it was prejudiced because its experts were not able to inspect the fire scene or analyze the television remains in its pristine state because by the time the defendant was able to analyze the television, the allegedly defective fuse was lost or destroyed.  The district court held that "[i]n this case, Sharp has put forth no evidence that Plaintiff intended to destroy the television set or fire scene, intended to suppress evidence, or intentionally lost or removed the fuse."   Thus, Gaskin is quite unlike the present case where there is evidence of intent to destroy the evidence over the objection of the employee assigned to scrap the parts.  Moreover, Gaskin involved a very small item (a fuse) which is easily lost.  The present case involves, inter alia, the knuckle of a boom that, according to the evidence, would not have normally be destroyed due to its high value, but would have been refurbished.  Accordingly, this court again holds that Mobile Tool had a duty to preserve the boom as evidence in this case.

Next, Mobile Tool objects to this court's statement that "[d]ue to Mobile Tool's spoliation, no defense expert ever saw the physical evidence..." (Order at 20).   Mobile Tool states that "both Mobile Tool and Third Party Defendant Davis Elliott identified the Royal Insurance Report and identified its author, Mr. Sellers, as an expert witness, and there is no question that he examined and photographed the bucket truck and boom after the accident."   As Large points out, however, Sellers was not specially retained by Davis Elliot, the insured. Nor was he specially retained by Mobile Tool.  Rather, Sellers worked for Royal Insurance Company and produced a report that many retained experts in the case have used.   Mobile Tool did not produce to its adversaries a Rule 26(b) report from Sellers, as would be required if Sellers were a defense liability expert.  Mobile Tool did not rely on Seller's expert conclusions but, rather, hired Dr. Charles Manning to produce a liability report.  Mobile Tool has not denied any of these facts in its reply.  This court finds that Mobile Tool's objection as to this issue is frivolous and irrelevant, as well as incorrect.

Mobile Tool next takes issue with the court's notation on page 18 of the January 7, 2008 Order that "Large points out that it has won every discovery motion but two."  The court then, in footnote 14, indicated that Large was denied certain Rule 30(b)(6) depositions, and was denied an order that Mobile Tool had to search its vast document cache for a manufacturing report one of Mobile Tool's witnesses thought he at one point had in his files.   Mobile Tool alludes that the court's recitation of facts is incorrect and states that "Plaintiff filed a motion to extend the discovery deadline and to reset dates.  Magistrate Cosbey denied Plaintiff's motion to extend fact discovery; he later granted Plaintiff's request to set new expert disclosure dates and dispositive motion deadlines."   Clearly, a motion to extend deadlines and reset dates is not a substantive

10

discovery motion.   Mobile Tool also asserts that when Large filed a motion to compel discovery responses, Magistrate Judge Cosbey denied the motion with respect to the Smith Report and granted the motion with respect to the Harrelson memorandum...”   The denial of the Smith Report was already considered by the court in footnote 14.  Again, Mobile Tool's objection to the court's factual finding is frivolous and appears to be part of its continuing attempt to shift the focus away from itself and its own behavior.

Mobile Tool strongly contends that it cannot be sanctioned for the alleged pre-suit spoliation of the boom in this case. Mobile Tool first asserts that no sanctionable spoliation occurred because the repair of the aerial lift occurred before Mobile Tool had a duty to preserve it.  This issue has been discussed above and will not be repeated in full here.  The court reiterates its decision that Mobile Tool did, in fact, have a duty to preserve the boom.

Mobile Tool also argues that it cannot be sanctioned for spoliation because Large has not demonstrated that the spoliation was intentional.  Again, this court has held, several times, that Mobile Tool intentionally scrapped the boom.  Mobile Tool acknowledges that it knowingly and intentionally repaired, refurbished and scrapped the various portions of the truck and boom, but insists that the destruction of evidence was “accidental”, apparently because it did not know it was evidence or was likely to become evidence.  However, it is clear that Mobile Tool knew that whenever there was an accident involving a boom, it should be preserved at least until the statute of limitations expired.  Common sense further dictates that when the accident produces very serious injuries and prompt settlement is not negotiated, the evidence should be preserved until the statute of limitations has run. Instead of waiting for the two-year of statute of limitations to expire, Mobile Tool discarded the crucial parts of the boom 18 months after the accident, and

before suit was filed.

Mobile Tool next argues that even if any spoliation occurred, Indiana and Seventh Circuit precedent conclusively precludes any sanction greater than an evidentiary inference and the associated jury instruction.  Mobile Tool cites to numerous Indiana and Federal cases which it claims establishes that this issue is governed by Indiana law.  However, a reading of those cases reveals that they involve the <u>tort</u> of spoliation, and thus are inapplicable.  As the tort of spoliation is not available in this case, the spoliation becomes a purely evidentiary matter, and it is clear that "[t]he imposition of a sanction (e.g., an adverse inference) for spoliation of evidence is an inherent power of federal courts – though one "limited to that [action] necessary to redress conduct 'which abuses the judicial process'" – and the decision to impose such a sanction is governed by federal law. <u>Hodge v. Wal-Mart Stores, Inc.</u>, 360 F.3d 446, 449 ((4th Cir. 2004). <u>See also</u> <u>Silvestri v. General Motors Corp.</u>, 271 F.3d 583, 590 (4th Cir. 2001)(quoting <u>Chambers v. NASCO, Inc.</u>,501 U.S. 32, 45-46 (1991).

As noted in this court's order of January 7, 2008, contumacious conduct merits strong sanctions, and when the court uses its inherent power to root out contumacious conduct, no showing of willfulness, bad faith, fault or even prejudice is required.  <u>Marrocco v. General Motors Corp.</u>, 966 F.2d 220 (7th Cir. 1992); <u>Langley v. Union Elec. Co.</u>, 107 F.3d 510 (7th Cir. 1997); <u>Patterson v. Coca Cola Bottling Co.</u>, 852 F.2d 280, 283 (7th Cir. 1988); <u>Hal Commodity Cycles Mgmt. Co. v. Kirsh</u>, 825 F.2d 1136, 1138 (7th Cir. 1987); <u>Newman v. Metro. Pier & Exposition Auth.</u>, 962 F.589, 591 (7th Cir. 1992)("[t]he cases in this circuit . . . do not set up a row of artificial hoops labeled 'bad faith' and 'egregious conduct' and 'no less severe alternative' through which a judge must jump in order to be permitted to dismiss a suit.")

This court reiterates its holding that Mobile Tool's conduct in this case warrants sanctions.  In fact, the spoliation of the evidence, alone, fully warrants the sanctions imposed.[4] The destruction of the boom parts has rendered it impossible for Large to properly present its theories of how the fire started in the boom.  In order to level the playing field at trial, Mobile Tool must be sanctioned by being denied the opportunity to to cross examine Large's expert witnesses at trial regarding their inability to examine the destroyed parts of the boom, and also by being denied the opportunity to present its own expert witnesses to testify as to the cause of the fire.   Finally, it is, of course, appropriate to inform the jury of the destruction of the evidence and that they may draw a negative inference.

Mobile Tool states, in footnote eight of its brief in support of reconsideration that "[t]o bar cross-examination of Plaintiff's expert witnesses as to any issue even tangentially involving the aerial lift evidence when Plaintiff is also entitled to make offensive use of the spoliation instruction is to essentially deprive Mobile Tool of any ability to cross-examine Plaintiff's expert witnesses."  It appears that Mobile Tool has read a bit too much into the court's sanctions. Mobile Tool is only barred from cross-examining Large's expert witnesses regarding their inability to examine the destroyed parts of the boom.   This sanction is specifically tailored to fit Mobile Tool's misconduct in destroying the boom, and the court believes it is a fair sanction.

Mobile Tool also claims that the court's imposed sanctions are "inconsistent with this Court's previous considerations concerning cross-examination in its order resolving the parties'

---

[4]  As the court noted in its January 7, 2008 Order, the spoliation coupled with the discovery issues, come very close to supporting the grant of an outright default judgment against Mobile Tool.  This is even more evident now, after having given Mobile Tool additional opportunity to defend itself against Large's claims of discovery abuse, which opportunity Mobile Tool failed to use wisely.

Daubert motions."   However, the Daubert motions were ruled upon totally separate and isolated from any consideration of the possibility of sanctions being imposed.  The Daubert rulings are merely preliminary evidentiary rulings to guide the parties as they prepare for trial, and are not binding upon the court in any fashion.  The Daubert rulings will be properly modified at trial to take into account the imposed sanctions, and will not contradict or be inconsistent with the sanctions.

Conclusion

On the basis of the foregoing, Mobile Tool's motion to reconsider is hereby DENIED.

Entered: May 20, 2008.

s/ William C.  Lee
William C. Lee, Judge
United States District Court