# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

SAMUEL R. LARGE          )
                               )
          Plaintiff,        )      Cause No. 1:02-CV-177
                               )
    -v-                    )
                               )
MOBILE TOOL INTERNATIONAL,  )
INC., MTI INSULATED PRODUCTS,  )
INC., TECO, INC., AND OCET, INC.   )
                               )
                               )

## OPINION AND ORDER

Before the court are numerous motions in limine and other pretrial motions filed by Defendants Mobile Tool International, Inc. and MTI Insulated Products, Inc. (together, "Defendants") in anticipation of the upcoming jury trial set for September 16, 2008. Plaintiff, Samuel R. Large ("Large") responded to the motions and the Defendants replied. The court held a trial management conference on September 8, 2008 at which time the undersigned addressed a number of these motions. This written Order serves as confirmation of those rulings and provides rulings on matters taken under advisement during the conference.

**Motions in Limine**

District court judges have broad discretion in ruling on evidentiary questions presented before trial on motions in limine. *Jenkins v. Chrysler Motors Corp.,* 316 F.3d 663, 664 (7th Cir.2002). The district court's power to exclude evidence in limine derives from the authority to manage trials. *United States v. Caputo,* 313 F.Supp.2d 764, 767-68 (N.D.Ill.2004) (citing *Luce v. United States,* 469 U.S. 38, 41 n. 4, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984)); *see also Charles v.*

*Cotter,* 867 F.Supp. 648, 655 (N.D.Ill.1994). A motion in limine should only be granted where the evidence is clearly inadmissible for any purpose. *Caputo,* 313 F.Supp.2d at 768. "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Hawthorne Partners v. AT & T Tech., Inc.,* 831 F.Supp. 1398, 1400 (N.D.Ill.1993).[1] With these guidelines in mind, we turn to the motions before the Court.

A.    **MOTION in Limine *to Exclude Undisclosed Opinions and Undisclosed Documents Relied upon by Plaintiff's Experts*** [DE 363]

Pursuant to stipulation, one of Large's experts, John Dagenhart had his trial preservation deposition taken on July 11, 2008 due to health concerns that may prevent his appearance at trial. Mobile Tool asserts that the scope of Dagenhart's opinion and the support therefore had been greatly expanded in the weeks leading up to his deposition.

At the trial management conference, Large informed the court that Dagenhart is going to testify live. Accordingly this court finds the motion in limine to be MOOT, and further rules that any undisclosed opinions will be addressed during trial as they arise.

B.    **MOTION in Limine to *Exclude Evidence of Other Incidents*** [DE 373]

---

[1]This Court's rulings on the parties' motions in limine are conditional. *See Wilson v. Williams,* 182 F.3d 562, 567 (7th Cir.1999) (suggesting district courts specify whether rulings on motions in limine are conditional or definitive). As the district court aptly explained in *Hawthorne Partners:*

> Denial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted at trial. Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded. The court will entertain objections on individual proffers as they arise at trial, even though the proffer falls within the scope of a denied motion in limine.

831 F.Supp. at 1401 (internal citations omitted); *see also Noble v. Sheahan,* 116 F.Supp.2d 966, 969 (N.D.Ill.2000). Accordingly, the Court may, in the exercise of sound judicial discretion, amend an in limine ruling if warranted. *Caputo,* 313 F.Supp.2d at 768 (citing *Luce,* 469 U.S. at 41-42, 105 S.Ct. 460).

Mobile Tool anticipates that Large will seek to introduce evidence about other claims and incidents involving Mobile Tool, products manufactured by TECO, or similar products manufactured by other parties. Mobile Tool argues that settled law requires that evidence of "other incidents" in product liability cases is admissible only when the other accidents are substantially similar to the one in the case at bar. Mobile Tool characterizes Large's accident as a "freak accident" and argues that "other incidents" are not admissible because they are not substantially similar.

As Large notes, Mobile Tool does not cite specific incidents that it wishes excluded. Large argues that Mobile Tool has failed to carry its burden of providing specific instances of prejudicial evidence to which the court can react on a motion in limine. Large states that it does not contend that, prior to his accident, TECO or Mobile Tool incurred actual accidents involving hydraulic fires following contact between conductive test bands mounted on non-conductive areas of upper booms. Rather, Large contends it was well-known to Mobile Tool or should have been well-known, that the test band presented a dangerous condition for bucket operators, and Mobile Tool should have remedied it or warned Large of the latent danger. Large states that it can point to several examples in which certain instances of prior product failure will be germane and admissible to prove Mobile Tool's notice of a dangerous condition. Large argues that the requirement of similarity is less strict when the evidence is sought to be admitted to show notice. Additionally, Large claims that to the extent Mobile Tool opens the door by offering affirmative evidence of its manufacturing and design prowess, all instance of product failure, product defect and failed functioning are germane to cross examination.

As this court noted at the trial management conference, Mobile Tool has failed to identify

any specific evidence it wants excluded from the trial rendering it impossible to determine whether this evidence is admissible. Thus, its motion in limine will be DENIED.

**C.   MOTION in Limine *Regarding Chris Hess* [DE 365]**

Mobile Tool objects that Mr. Hess, former counsel of record in this suit, has been disclosed by Large as a trial witness. Mobile Tool claims that Hess could not have any relevant testimony. In response, Large explains that Hess, if called, would testify to conversations with Mobile Tool's CEO, Van Walbridge. Large further explains that Hess would likely be a rebuttal witness in this case, if called.

Clearly, the parties have presented insufficient information for this court to make an evidentiary ruling at this time. The court will rule on this issue as the evidence unfolds.

**D.   MOTION in Limine to *Exclude Testimony from Plaintiff's Friends Regarding Plaintiff's Earning Capacity* [DE 367]**

Mobile Tool objects to the testimony of Large's co-workers (Danny Williams, Aaron Lankford, and Kevin Easter), to establish Large's impaired earning capacity. Large acknowledges that it intends to call these co-workers (and perhaps others) to show what their career path has been since the date of the accident, and argues that Large would have taken a similar career path.

Large points out that the only case cited by Mobile Tool, Scott v. Nabours, 296 N.E.2d 438, 441(Ind. App. 1973), states that a plaintiff can recover damages for "adverse effect of vocation", which may be proven by expert and non-expert testimony. The basic measure of damages is "the difference between the amount which the plaintiff was capable of earning before the injury and the amount which he is capable of earning thereafter". Id. The evidence "need not show conclusively or with absolute certainty that earning capacity has been impaired..." Id.

Mobile Tool claims that the co-workers' testimony would be cumulative of the vocational

expert's (Melberg) opinion. Large acknowledges that some of the inputs Melberg used in formulating his opinions were the wages earned by similarly-qualified members of Large's co-workers. Large argues that Mobile Tool has not cited any case law indicating that a vocational capacity expert cannot testify at trial to the plaintiff's lost vocational capacity by reference to the wages earned and benefits accrued by representative workers who testify previous to the expert at trial. Large claims that this method adds to the effectiveness and efficiency of trial. Large also argues that he will prove that the co-workers were like him in terms of work habits, career goals, skill and priorities, and states that Mobile Tool is free to prove otherwise and then the jury may decide.

Mobile Tool asserts that it had no notice that the co-workers might be witnesses in this case. However, Large points out that each and every one of them were disclosed in Large's Rule 26(a) notices as a person with knowledge material to plaintiff's case. The co-workers were also identified in the expert reports of Melberg as persons providing information germane to Large's lost earning capacity analysis. Large states that each of the co-workers will testify to their wages and job circumstances based on facts within their own purview, known to Mobile Tool, or knowable if it had chose to depose them or otherwise discover this data. Additionally, wage and benefit information concerning these operators was disclosed through Melberg and was available to Mobile Tool independently. Large also points out that even though Mobile Tool has claimed that the evidence will be hearsay, it has failed to identify one piece of hearsay evidence it believes the individual co-workers will in fact offer.

All of Mobile Tool's objections ring hollow. As the court expounded at the trial management conference, Large is perfectly in his right to call his co-workers as witnesses. These

co-workers have been properly disclosed to Mobile Tool as having information relevant to the case. Accordingly, they will be permitted to testify. To the extent that Mobile Tool has any specific, valid objections at trial, Mobile Tool may raise them and the court will issue a ruling.

**E.      MOTION in Limine *to Exclude References to Discovery Motions and Orders* [DE 368]**

Mobile Tool anticipates that Large will attempt to introduce evidence related to the course of discovery in this case and sanctions orders related to discovery matters and spoliation, and notes that Large's proposed jury instructions refer to "contumacious conduct" of the defendants. Mobile Tool claims that evidence of these discovery issues, apart from an adverse inference instruction for spoliation, are irrelevant and prejudicial.

Large, however, argues that the conduct underlying the sanctions is material to this case "in some ways now known to Large, and some that may emerge as trial witnesses are examined and evidence considered". Large states that the answer to the issue is not for this court to rule extensively now but rather to consider each point as it arises at trial. Large also states that a literal interpretation of Mobile Tool's motion would obviate the adverse inference instruction and would give certain defense witnesses a "free pass" during their testimony as they could say anything they wanted about the positive performance and reputation of the company without having their credibility impeached by reference to acts of spoliation and censure.

As this court explained at the September 8, 2008 trial management conference, it is improper for Large to reference specific discovery motions or orders in this case when discussing spoliation before the jury. To the extent that other issues arise during trial relating to the substance of this motion, the court will rule at trial.

**F.      Defendants' Motion in Limine to Exclude Evidence of Changes to the Product's Design, Manufacture, or Warnings, or Industry Standards Related to the Same [DE 366]**

Large has sued the Defendants alleging negligence and product defect claims related to an aerial lift device or "bucket truck" – the TECO V-5A or Unit 4068. Included within these allegations are assertions that the product was improperly designed, manufactured or that the warnings on the product were insufficient to avoid injury. The Defendants seek to exclude any evidence proffered by the Plaintiff which relates to changes to the design, manufacture, or warning of the product that is the subject of this lawsuit. According to the Defendants, the accident that spawned the present litigation occurred in June 2000 and the bucket truck was manufactured in 1996. Defendants anticipate that Large will offer evidence to show that subsequent to the injuries he sustained from the bucket truck, Defendants redesigned or manufactured the bucket truck differently and, if such designs/manufacture had been originally been implemented, his injuries would be less severe or have not occurred at all. This, they contend, is precisely the type of evidence prohibited by Fed.R.Evid. 407.

Federal Rule of Evidence 407 provides that subsequent remedial measures may not be used as evidence of liability. Indeed, in the products liability context, if the introduction of the subsequent remedial measure is utilized to show that the measure "would have made the injury or harm less likely to occur," it falls within the realm of Fed.R.Evid. 407.

In his response, Large argues that the court should defer ruling on the motion in limine because there are certain times when the use of subsequent remedial measures are appropriate such as "when offered for another purpose, such as providing ownership, control, or feasibility of precautionary measures, if contraverted or impeached." Fed.R.Evid. 407. Large does not, however, explain further what evidence he intends to offer that would, in fact, fall within these exceptions. Moreover, as defendants note, Plaintiff's own experts have admitted that the bucket truck was

designed in accordance with applicable industry standards[2] in place in 1996. Thus, it appears that Large, to the extent he utilized this evidence, undoubtedly wants the *jury* to conclude that the Defendants added new warnings or changed the product specification in later years because the product was unsafe without it. That is precisely the type of inference that Rule 407 forecloses, in order to avoid discouraging the taking of remedial measures. *See Pastor v. State Farm Mut. Auto. Ins. Co.,* 487 F.3d 1042, 1045 (7th Cir.2007); *Lust v. Sealy, Inc.,* 383 F.3d 580, 585 (7th Cir.2004). Accordingly, the Defendants' motion is GRANTED in part as to any evidence of subsequent remedial measures offered for the purpose of demonstrating liability. If plaintiff seeks to introduce measures employed after the date of his injury for some other permissible purpose, the court will consider that evidence during the course of the trial.

In addition, the Defendants motion seeks to limit the discussion of ANSI standards to those in place at the time the product was placed in the stream of commerce and/or the time of the accident.[3] That portion of the motion is also GRANTED as Plaintiff indicates that he does not intend to introduce evidence of ANSI standards outside that time frame.

## G.     Defendants' Motion in Limine Regarding City of Houston Bid

On November 22, 1998, the City of Houston opened a competitive bid process to procure a fire truck with an aerial lift. TECO, Inc. bid on the job and, on January 15, 1999, TECO was the winner of the bidding process. On February 5, 1999, Mobile Tool acquired the assets of TECO, Inc. As part of the original bidding process, TECO named itself as the party providing insurance coverage. However, after Mobile Tool acquired TECO's assets, MTI Insulated Products Inc. was

---

[2]Those standards are promulgated by the American National Standards Institute ("ANSI").

[3]Counsel indicates that there were no changes to the standards between 1996 and 2000.

added to the Mobile Tool International, Inc. policy that referenced "City of Houston" as a certificate holder. In addition, in a February 16, 1999 letter to City of Houston's Louis Reznick, a representative of the former TECO informed the City of Houston that "TECO, Inc. has officially become M.T.I. Insulated Products. By motion passed on March 24, 1999, the Houston City Council awarded the bid to "Teco, Inc. ...(now known as MTI Insulated Products, Inc.)." Plaintiff asserts in his trial brief that because the Defendants added the City of Houston as the Certificate holder and held themselves out to a governmental body as the successor to TECO, they are now precluded from arguing that they cannot be held liable under a successor liability theory.

In response, the Defendants now move to "exclude any reference to or evidence regarding a purported project bid by Mobile Tool regarding the City of Houston" claiming that the evidence sought to be introduced by Large is irrelevant, without foundation, hearsay, and unauthenticated. For its relevance objection the Defendants cite to *Guerrero v. Allison Engine Co.*, 725 N.E.2d 479, 483 (Ind.App.,2000) for the proposition that as a general rule, "when one corporation purchases the assets of another, the buyer does not assume the debts and liabilities of the seller." And, while there are four generally recognized exceptions to this rule, the Defendants assert that Indiana law does not recognize the product-line successor exceptions. Under that exception, a party that acquires a manufacturing business and continues the output of its line of products assumes strict tort liability for any defects in units of the same product line previously manufactured and distributed by the entity that sold the manufacturing business. *Guerrero v. Allison Engine Co.*, 725 N.E.2d 479, 483 (Ind.Ct.App.2000) (citing definition of product-line succession from *Ray v. Alad,* 560 P.2d 3, 11 (Cal.1977). However, while the Indiana Supreme Court has not expressly adopted the product line successor exception, the Seventh Circuit, applying Indiana law has adopted and recognized the

product-line successor rule in both contract law and in products liabilities cases. See *P.R. Mallory & Co., Inc. v. American States Ins. Co.,* 2004 WL 1737489, 6 (Ind.Cir.) (Ind.Cir.,2004) *Allegheny Airlines, Inc. v. United States*, 504 F.2d 104 (7th Cir.1974) (Seventh Circuit under Indiana law considered applying the product line successor rationale to an insurance dispute involving contract law); *S. Bend Lathe, Inc. v. Armsted Indus., Inc.*, 925 F.2d 1043 (7th Cir.1991)(Seventh Circuit recognized and considered the applicability of the product line successor theory to a purchase agreement).[4] This said, the issues asserted by Large regarding the Houston City bid are relevant to determining whether Mobile Tool was a product line successor of TECO.

But, Large is not out of the water yet. He must still demonstrate the admissibility of the documents he seeks to introduce as well as authenticity and foundation for the documents. According to the Defendants, Large has not listed a single witness who could testify about the content of the documents or that could authenticate and lay a foundation for them.

From Large's response brief, it is clear that he intends to present only three exhibits.[5] The first document is a letter on TECO letterhead from an individual named Jeremy Hanks. The Defendants assert that the letter is hearsay and thus, inadmissible. In response, Large argues that the evidence is not hearsay, pursuant to Fed.R.Evid. 801(d)(2) because it is a party admission.[6]

---

[4]In their reply, Defendants take issue with the position that Indiana law recognizes the product line exception to successor liability. If, at the conclusion of the trial, Defendants seek to challenge this court's conclusion that Indiana law does, in fact recognize such an exception, they may do so in a post-trial filing.

[5]In their Motion in Limine, Defendants attached 15 pages of exhibits which they believed Large intended to offer at trial. In his response, Large focuses on only three documents and thus, the Court presumes that Large does not intend to offer as evidence all of the exhibits attached to the Defendants' Motion.

[6]Large actually refers to the documents as subject to a hearsay exception for "admissions against Mobile Tool's interest." This wording commingles two evidentiary rules and is a bit confusing. A party

Under Rule 801(d)(2)(D), an out-of-court statement is not hearsay if it is "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." Fed.R.Evid. 801(d)(2)(D). Mr. Hanks signed the letter on behalf of TECO, Inc. Large has not laid any foundation or explained in his brief how Mr. Hanks was an agent of the Defendants or acting within the scope of the agency when he authored the letter. Accordingly, unless Large can successfully navigate this problem, this document will be precluded from being offered at trial. However, the court shall reserve its ruling on this matter until it hears the context in which it is offered at trial.

The second document Large seeks to offer is a July 26, 1999 letter to Reznicek by Mobile Tool representative Gale Linnemeier. Although the letter appears innocuous on its face, apparently, the Plaintiff seeks to utilize the document to argue that Mobile Tool Insulated Products, took over the bid for TECO, Inc. However, the letter referenced is anything but a smoking gun in this regard. Assuming that Large can lay the requisite foundation, the court shall DENY the motion in limine as to this document.

Finally, Large argues that the key document is the Certificate of Liability Insurance which adds the City of Houston to the Mobile Tool insurance policy. Again, however, the document is clearly relevant to the issue of whether Mobile Tool held itself out as TECO's successor and thus, the court shall not at this time exclude the evidence and shall wait until trial to rule on this evidence. The Defendants' Motion in Limine, therefore, is DENIED.

**H.      Defendants' Motion in Limine to Exclude Dr. Nicholas E. Poulos' Testimony Regarding**

---

admission is not hearsay so it would not be classified as an exception to the hearsay rule. A statement against one's interest is a hearsay exception but, only if certain requirements are met. See Fed.R.Evid. 804(b)(3). The main requirement is that the declarant must be unavailable.

**Other Providers' Medical Bills [DE 369] and Defendants' Motion in Limine to Exclude Plaintiff's Personal Testimony Regarding his Medical Bills [DE 371]**

Under Indiana law, to receive a damage award covering medical expenses incurred as the result of an injury, it must be proven at trial that these expenses were both reasonable and necessary. *Smith v. Syd's, Inc*. 598 N.E.2d 1065, 1066 (Ind.,1992). "The reasonableness of expenses can be proven, in part, by a demonstration that the plaintiff paid the amounts incurred. This is premised upon the concept that one would not pay an unreasonable bill. However, the necessity of the expenses must be proven as well." *Id.* As Defendants point out, this is generally accomplished by offering the testimony of medical experts.

Defendants move to exclude two types of evidence relating to Large's medical bills. First, Defendants seek to exclude Dr. Nicholas E. Poulos ("Dr. Poulos") from testifying as to the reasonableness and necessity of Large's medical expenses by medical providers other than him. Second, the Defendants seek to exclude Large's own testimony as to the substance and truth of his medical bills. In both instances, Defendants argue that the witnesses lack personal knowledge of the subject of their testimony.[7] More specifically, Defendants argue that Large has no personal knowledge of the billing process, whether the bills accurately reflect the services provided, and whether the bills reflect the customary charge for each service rendered. As for Dr. Poulos, Defendants urge that his testimony must be limited to the care he provided to Large since he has no personal knowledge of medical care provided by others.

---

[7]Although this court must apply the Federal Rules of Evidence, *see Schrott v. Bristol-Myers Squibb Co.,* 403 F.3d 940, 943 (7th Cir. 2005), it is interesting to note that Indiana has simplified the presentation of medical expenses evidence through adoption of Indiana Rule of Evidence 413 which permits the admission of statements of charges for medical, hospital, or other health care expenses for diagnosis or treatment occasioned by an injury. The rule further provides that the statements shall constitute prima facie evidence that the charges are reasonable.

During the trial management conference, the Court indicated that Large is permitted to testify regarding both the medical care he received and the medical bills he received for that care. If the Defendants have evidence that the medical care or bills Large received were not "reasonable and necessary" expenses for the injuries Large received as a result of the accident, they are free to present such evidence to the jury. In addition, the court indicated that the parties should make every effort to stipulate to the incurred medical expenses to streamline this issue for the jury. Accordingly, this motion is DENIED.

I.     **Defendants' Motion in Limine to Exclude Evidence of Insurance Coverage** [DE 370]

Defendants next seek to preclude Large from introducing "any evidence of Defendants' of the existence, amount, or scope of Defendants' insurance coverage, as well as evidence of the third party claim against Davis Elliott for indemnification and the triggering of Davis Elliott's insurance coverage." (Motion at 1). In response, Large concedes that pursuant to Fed.R.Evid. 411 it is improper to introduce the fact of the Defendants' liability insurance coverage as evidence that the Defendants acted negligently or otherwise wrongfully. In light of Large's concession, this portion of the Motion in Limine is GRANTED.

However, Large does maintain that he should be entitled to show the existence of insurance coverage as a way of demonstrating Mobile Tool's liability as TECO's successor in interest. In particular, he seeks to introduce evidence of an insurance agreement between his employer, Davis Elliott, and the manufacturer of the bucket truck, TECO, Inc. apparently to demonstrate that when Mobile Tool acquired TECO, Inc., Mobile Tool attempted to collect coverage under Davis Elliott's insurance policy instead of TECO. Second, Large seeks to introduce evidence that Mobile Tool named the city of Houston as an additional insured on its insurance coverage.

As noted in the previous motion in limine, Plaintiff seeks to establish that Mobile Tool falls within the product-line successor liability exception to the general rule that asset purchasers do not assume the liabilities of their predecessor corporation. To the extent that the Defendants acquired insurance or attempted to collect coverage under Davis Elliott's policy, this evidence may be relevant to that inquiry and it is not prohibited by Fed.R.Evid. 411. That rule does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency, ownership, or control, or bias or prejudice of a witness. That said, however, there is some possibility that details of the insurance policies could prejudice the Defendants. For this reason, the Court shall only permit the Plaintiff to inform the jury that a policy was acquired. If the Defendants so choose, they are permitted to submit a limiting instruction which the undersigned will read at the time the evidence is offered. In lieu of the certificate of insurance being offered to the jury, Mobile Tool is also permitted if it chooses, as discussed at the trial management conference, to stipulate that it added the City of Houston as an insured on its policy because it was required to do so to fit into TECO's shoes to secure the City of Houston bid. Thus, the court DENIES the Defendants' Motion in Limine relating to insurance coverage, to the extent that the evidence offered is utilized for a purpose permissible under Fed.R.Evid. 411.

**J.      Defendants' Motion in Limine to Enforce Bifurcation [DE 372]**

On January 8, 2008, the undersigned entered an Order dividing this case into two phases, liability and damages and indemnification. [DE 276]. The liability and damages phase was further sub-divided at the Final Pretrial Conference wherein the court indicated, that the jury would hear evidence of liability initially and, if necessary, a second jury would hear damages evidence.[DE 349] Defendants anticipate that Large will attempt to introduce evidence of his injuries and medical

condition during the liability phase of the trial and thus, they have moved to exclude *in limine* any evidence that Large seeks to introduce regarding his injuries or the extent of his injuries during the liability phase.  In addition, the Defendants seek to exclude any liability evidence that Large would seek to utilize during the damages phase of the trial, if the case evolves to that phase.

In response, Large argues that the fact of injury is relevant and necessary to the liability phase of the case in that he is required to prove an injury as part of his claims.  *See Hydrite Chemical Co. v. Calumet Lubricants Co.,* 47 F.3d 887, 890-891 (7th Cir. 1995) ("if the trial is divided, as is commonly done, between liability and damages, the fact of injury belongs in the first trial and the quantification of the injury by means of an assessment of damages in the second.").  From the Defendants reply, it appears that they concede that *the fact* that Large was injured is permissible for the jury to learn during the trial.  However, they argue that testimony to establish this fact is not necessary since they admit that Large was injured as a result of the accident in this case.

In light of the Defendants' admission, the Court agrees that anything more than the fact of injury is not appropriate in the liability phase of the trial and thereby GRANTS the Defendants' Motion in Limine.

**Motions to Strike and Other Filings**

1. **Defendants' Motion to Strike Plaintiff's Exhibits, Witnesses, Statement of the Case, Proposed Voir Dire Questions, and Proposed Jury Instructions and Verdict Forms for Failure to Comply with Order Controlling the Case**

Mobile Tool first seeks to strike Large's pre-trial filings on the ground that Large's Rule 26(a)(3) disclosures include 104 exhibits that were not included in Large's exhibit list attached to the initial pre-trial order.  However, as Large points out, the initial pre-trial order is subject to amendments before it is final.  Furthermore, most of Large's additions and edits after the pre-trial

conference in this case simply eliminated inaccurate and moot information. Finally, Large's supplemental exhibit list was not only included in its entirety in his Rule 26(a)(3) disclosures, but was also submitted to Mobile Tool on August 6, 2008, one week prior to the Rule 26(a)(3) deadline.

Mobile Tool next objects that Large's August 12, 2008 Rule 26(a)(3) disclosures include three witnesses who have not been disclosed previously in this case. In his August 12, 2008 disclosures, Large lists Chris Hess as a witness that Large may call if the need arises. Large also identifies as "witnesses whom Plaintiff expects to present by deposition" Alexis Lahr and Dale Sweeney. Mobile Tool argues that Large did not identify any of these witnesses in the pre-trial order, nor did Large ever disclose these names previously in this case under Rule 26.

In response, Large points out that Mobile Tool was not surprised by the addition of any of these witnesses and cannot claim any prejudice. Lahr and Sweeney were Mobile Tool employees and gave depositions several years ago that Mobile Tool arranged. Mobile Tool filed motions in this case in which it used their depositions as exhibits. Likewise, Chris Hess was a witness in this Court's June 25, 2007 sanctions hearing and testified without objection. As the witnesses were disclosed within the Rule 26(a)(3) deadline, or reasonably thereafter (see below), this court finds Mobile Tool's objection to be without merit.

Next, Mobile Tool argues that Large's Rule 26(a)(3) disclosures fail to include proper deposition designations. Mobile Tool states that Large has identified nine witnesses whom he expects to present by deposition, but has not identified what portions of the depositions he intends to introduce at trial. Large, however, correctly points out that the deposition designations were not untimely disclosed. The actual designated line-by-line disclosures were sent to Mobile Tool on August 21, 2008, a week prior to the time that objections must be made. Rule 26 does not specify

that the line-by-line designations must be made with the Rule 26(a)(3) disclosures, and there is not a specific deadline for these designations, anywhere.

Lastly, Mobile Tool objects because several of Large's pre-trial filings were filed one and a half hours past the filing deadline, as they were served in the early morning hours of August 13, rather than by midnight of August 14. Mobile Tool has not alleged any prejudice from this late filing. Large has acknowledged serving some of his pre-trial filings in the early morning hours of August 13, but correctly argues that sanctions are not warranted because it is clear that the violation was harmless. See FRCP 37(c)(1).

Accordingly, Mobile Tool's motion to strike will be **DENIED.**

2. **Defendants' Motion to Strike Plaintiffs' Untimely Expert Disclosure of Specially Retained Expert Ms. Sharon Reavis**

Mobile Tool seeks to strike Ms. Sharon Reavis, Large's life care planner. On December 14, 2005, Magistrate Judge Cosbey entered a discovery scheduling order which required Large to disclose specially retained experts and their Rule 26 reports on or before February 15, 2006. Large identified two specially retained liability experts and a vocational rehabilitation expert, but did not identify a life care planner or any other special expert to testify on medical issues. On June 16, 2008, Large identified a new specially retained expert witness (Reavis) and provided an expert report for the first time. Mobile Tool claims surprise and inability to depose.

In response, Large notes that the December 14, 2005 discovery cut-off order was keyed to the then trial date of October 17, 2006. Large states that after the December 2005 order was issued, the parties met and conferred on how to handle expert medical damage testimony in this case, given that medical and wage loss damages were dynamic and growing, and that there was uncertainty about how Large's medical damages would be impacted by his August 2005 back surgery from

17

which he was in the process of recovering. The parties set a course by concurrence of counsel, as the Federal Rules provide and encourage. With Court permission, the parties stipulated to defer the medical damage discovery in this case until September 1, 2006.

September 1 came and went, and Mobile Tool had not yet commenced the medical discovery of Large's physicians it planned to depose, and Large was not yet in a position to document for trial the opinions of his treating physicians because of Large's ongoing recuperation from back surgery. The case then focused on Large's motion for discovery sanctions, which was granted on January 7, 2008. On June 25, 2007, Large petitioned this Court to allow the parties to keep pursuing medical discovery, which was granted. Later in 2007 several of Large's treating physicians were deposed by both parties. The doctors opined on future surgery needs for Large and surgical costs. Neither party had moved the Court to close medical damages discovery and the Court has not done so on its own motion. Thus, Large argues that the discovery of medical damages was, and still is, an open issue in this case.

In colloquy among counsel, Large's counsel indicated in 2008 that Large would add a life care planning expert to his list of trial experts. On June 9, 2008, Large informed opposing counsel that Large planned to add to his experts imminently. Large states that he made the full disclosure of Reavis' opinions on June 16, 2008 (more than 90 days before trial). Large argues that whenever a court has not by order established an earlier time, Rule 26(a)(2)(C) closes the identification of expert witnesses 90 days before trial. Large contends that Reavis' opinions do not break any new ground in this case or generate a new litigation topic. Large claims that Reavis merely organizes and projects forward the medical care that Large is already receiving, and is physician-projected to get, in seven treatment categories well known and fully disclosed for some time to Mobile Tool.

18

Large states that Reavis' participation at trial will cut down on its length and complexity, obviating the need for much testimony on these points from Large's many physicians[8].

Large claims that any prejudice to Mobile Tool is self-inflicted as they have not deposed Reavis. Rather, Mobile Tool waited 51 days after receiving the Reavis report, and twenty-seven days after being advised of possible deposition dates, to file the current motion to exclude Reavis. Mobile Tool seeks, in the alternative, to depose Reavis and Large has no objection (nor could they state one since discovery has not closed).

This court finds that there is no basis to strike Reavis. Clearly there was no discovery cut-off related to medical evidence. Moreover, it is clear that Reavis was timely disclosed as Large identified Reavis more than 90 days prior to trial. This court agrees with Large that Mobile Tool's current predicament is self-inflicted. Following what has become a pattern in this case, Mobile Tool did not object to Reavis in a timely manner. Rather, Mobile Tool waited 51 days after the disclosure to file the current motion to strike. Mobile Tool now complains that they do not have time to find a rebuttal expert, nor have they deposed Reavis. The court finds that Mobile Tool's problems are, as usual, of its own making. As noted, Large made Reavis available for deposition (on multiple possible dates), but Mobile Tool declined to take advantage of that opportunity.

Additionally, it does not appear that Reavis adds that much to Large's case. Rather, Reavis is primarily a "summary expert", and has simply collected a substantial amount of the medical evidence and prognosis notes into one handy little report. Notably, Mobile Tool has not even alleged with any specificity that it is prejudiced by the content of Reavis' report or anticipated

---

[8] Several of the physicians are on the parties' witness lists in the proposed pre-trial order submitted on July 21, 2008, i.e., Drs. Paulos, Campbell, Rauck, Teasdall, Shaffrey and Curling.

testimony. Reavis has clearly formulated her report based on a review of the medical evidence in this case, which has been freely available to both parties for quite some time.

Accordingly, as there is no basis for Mobile Tool's motion to strike, the motion will be DENIED. However, as medical discovery has not closed, Mobile Tool may depose Reavis.

**3.    Motion to Increase the Ad Damnum Clause of the Amended Complaint**

This motion was unopposed and Defendants indicated at the trial management conference that they had no objection to the motion. Accordingly, the motion is GRANTED.

### CONCLUSION

Based on the foregoing, the Defendants Motions in Limine are decided as follows:

| DE 363 | MOTION in Limine *to Exclude Undisclosed Opinions and Undisclosed Documents Relied upon by Plaintiff's Experts* is DENIED as MOOT |
|---|---|
| DE 373 | MOTION in Limine to *Exclude Evidence of Other Incidents* is DENIED |
| DE 365 | MOTION in Limine *Regarding Chris Hess* is DENIED |
| DE 367 | MOTION in Limine to *Exclude Testimony from Plaintiff's Friends Regarding Plaintiff's Earning Capacity* is DENIED |
| DE 368 | MOTION in Limine *to Exclude References to Discovery Motions and Orders* is GRANTED |
| DE 366 | MOTION in Limine to *Exclude Evidence of Changes to the Product's Design, Manufacture, or Warnings, or Industry Standards Related to the Same* is GRANTED |
| DE 364 | MOTION in Limine *Regarding City of Houston Bid is*  DENIED |
| DE 369 and DE 371 | MOTION in Limine *to Exclude Dr. Nicholas E. Poulos' Testimony Regarding Other Providers' Medical Bills* and MOTION in Limine *to Exclude Plaintiff's Personal Testimony Regarding his Medical Bills* is DENIED |
| DE 370 | MOTION in Limine *to Exclude Evidence of Insurance Coverage* is GRANTED in part and DENIED in part, as set out in the Order |
| DE 372 | MOTION in Limine to *Enforce Bifurcation Order* is GRANTED |

In addition, the Defendants' Motion to Strike Untimely Expert Disclosure of Specially Retained Expert Sharon Reavis [DE 356] is DENIED; the Defendants' Motion to Strike Plaintiff's Exhibits, Witnesses, Statement of the Case, Proposed Voir Dire, and Proposed Jury Instructions [DE 374] is DENIED; and Plaintiff's Motion to Increase Ad Damnum in Amended Complaint [DE 362] is GRANTED.

SO ORDERED. This 10th day of September, 2008.

s/ William C. Lee
United States District Court