UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| SAMUEL LARGE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL NO. 1:02cv177 |
| ) | |
| MOBILE TOOL INTERNATIONAL, INC., ) | |
| MTI INSULATED PRODUCTS, INC., ) | |
| TECO, and OCET ) | |
| ) | |
| Defendants. ) | |

OPINION AND ORDER

This matter is before the court on a "Renewed Motion for Summary Judgment on the Issue of Indemnification", filed by the third party defendant, Davis H. Elliot Company, Inc. ("Davis Elliot"), on January 19, 2009. The third party plaintiffs, Mobile Tool International, Inc. and MTI Insulated Products, Inc. (collectively "MTI"), filed their response on February 17, 2009, to which Davis Elliot replied on March 3, 2009.

Also before the court is a "Renewed Motion for Summary Judgment" filed by MTI on January 20, 2009. Davis Elliot responded to this motion on February 18, 2009, to which MTI replied on February 27, 2009. MTI's motion relates only to Count I and Count II of its Third Party Complaint against Davis Elliot.

Davis Elliot's motion will be granted in part and denied in part, and MTI's motion will be granted

Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as

to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  However, Rule 56(c) is not a requirement that the moving party negate his opponent's claim.  Fitzpatrick v. Catholic Bishop of Chicago, 916 F.2d 1254, 1256 (7th Cir. 1990).  Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  A scintilla of evidence in support of the non-moving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff."  Id.  In Re Matter of Wildman, 859 F.2d 553, 557 (7th Cir. 1988); Klein v. Ryan, 847 F.2d 368, 374 (7th Cir. 1988); Valentine v. Joliet Township High School District No. 204, 802 F.2d 981, 986 (7th Cir. 1986). No genuine issue for trial exists "where the record as a whole could not lead a rational trier of fact to find for the nonmoving party."  Juarez v. Ameritech Mobile Communications, Inc., 957 F.2d 317, 322 (7th Cir. 1992)(quoting Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).

Initially, Rule 56 requires the moving party to inform the court of the basis for the motion, and to identify those portions of the "pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, which demonstrate the absence of a genuine issue of material fact, Celotex, 477 U.S. at 323.  The non-moving party may oppose the

2

motion with any of the evidentiary materials listed in Rule 56(c), but reliance on the pleadings alone is not sufficient to withstand summary judgment. Goka v. Bobbitt, 862 F.2d 646, 649 (7th Cir. 1988); Guenin v. Sendra Corp., 700 F. Supp. 973, 974 (N.D. Ind. 1988); Posey v. Skyline Corp., 702 F.2d 102, 105 (7th Cir.), cert. denied, 464 U.S. 960 (1983).

So that the district court may readily determine whether genuine issues of material fact exist, under Local Rule 56.1, the moving party is obligated to file with the court a "Statement of Material Facts" supported by appropriate citation to the record to which the moving party contends no genuine issues exist. In addition, the non-movant is obligated to file with the court a "Statement of Genuine Issues" supported by appropriate citation to the record outlining all material facts to which the non-movant contends exist that must be litigated. See, Waldridge v. American Hoechst Corp. et al., 24 F.3d 918 (7th Cir. 1994). In ruling on a summary judgment motion the court accepts as true the non-moving party's evidence, draws all legitimate inferences in favor of the non-moving party, and does not weigh the evidence or the credibility of witnesses. Anderson, 477 U.S. at 249-251, 106 S.Ct. at 2511. Furthermore, in determining the motion for summary judgment, the court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the "Statement of Genuine Issues" filed in opposition to the motion. L.R. 56.1

Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. Anderson, 477 U.S. at 248. Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. Id. The issue of fact must be genuine. Fed. R. Civ. P. 56(c), (e). To establish a genuine issue of fact, the non-

moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586; First National Bank of Cicero v. Lewco Securities Corp., 860 F.2d 1407, 1411 (7th Cir. 1988). The non-moving party must come forward with specific facts showing that there is a genuine issue for trial. Id. A summary judgment determination is essentially an inquiry as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-252. Finally, the court notes that, "[i]t is a gratuitous cruelty to parties and their witnesses to put them through the emotional ordeal of a trial when the outcome is foreordained" and in such cases summary judgment is appropriate. Mason v. Continental Illinois Nat'l Bank, 704 F.2d 361, 367 (7th Cir. 1983).

## Discussion

The following factual background, as detailed in this court's Order of December 15, 2006, is pertinent to the pending motions. Davis Elliot is a Virginia corporation that owns, leases, or rents over 150 bucket trucks across the United States at any given time for purposes of constructing and repairing electrical transmission and distribution lines. On May 17, 1996, Davis Elliot entered into a Lease Agreement (the "Lease") with Defendant TECO, Inc. ("TECO") for the lease of a certain aerial lift device (the "Leased Unit"). According to the Complaint, the Leased Unit was designed and manufactured by Mobile Tool and/or its subsidiaries, one of which is TECO.

The Lease was negotiated via telephone between representatives of TECO and its headquarters in Indiana and representatives of Davis Elliot at its principal place of business in Virginia, and the Lease was sent to, and signed by, Davis Elliot in Virginia. The monthly

invoices for the Leased United were mailed to, and paid from, Davis Elliot's Virginia office. The Leased Unit was transferred to Virginia, used in Virginia, and maintained and stored in Virginia during the period of its use.

In 1999, Mobile Tool acquired certain assets of TECO pursuant to an Asset Purchase Agreement. One of the assets acquired was the Lease previously executed between TECO and Davis Elliot for the Leased Unit. The purchase of the Lease made Mobile Tool the new lessor of the Leased Unit and therefore entitled to the benefits of the Lease. One such benefit includes the indemnification and duty to defend provision contained within the Terms and Conditions of the Lease. Under the Lease, Davis Elliot agreed to:

> [R]elease, indemnify and hold [Mobile Tool] harmless from and against:
>
> (a) Any and all liability, loss, damage, expense, causes of action, suits, claims or judgments arising from injury to person or property resulting from or based upon the actual or alleged use, operation, delivery, or transportation of the Vehicle or its location or condition, and shall at its own cost and expense, defend any and all such suits which may be brought against [Mobile Tool], either alone or in conjunction with others upon any such liability or claims and shall pay and discharge any and all judgments and fines that may be recovered against [Mobile Tool] in any such action or actions; provided, however, that [Mobile Tool] shall give [Elliot] written notice of any such claim or demand.
>
> (b) Any and all losses, damages, costs and expenses incurred by [Mobile Tool] or [its] insurance agency because of (1) injury or damage sustained by any occupant of said Vehicle, including without limitation [Elliot], his employees, agents, or representatives, or (2) loss or damage to cargo or property owned by or in the possession of [Elliot], his employees, agents, or representatives.
>
> (c) All loss, damage, cost and expense resulting from [Elliot's] violation of any term of this agreement or breach of [Elliot's] warranties as expressed herein.

(d) Loss or damage to the Vehicle during the rental period for any reason.

(Lease terms and Conditions, Section 3, Exhibit B to Third-Party Complaint).

The general Lease Terms and Conditions were further supplemented by monthly invoices supplied directly from Mobile Tool to Davis Elliot, which include Terms and Conditions specifically tailored to the Leased Unit at issue. These invoices contain an indemnification clause that provides as follows:

> Buyer acknowledges that serious injury or death may occur to persons using or near personnel lifting units which are improperly operated or maintained.
>
> Buyer by accepting delivery of a serviced unit and/or parts supplied hereunder, thereby acknowledges possession of all service and maintenance manuals for that unit or units. Buyer expressly warrants, covenants and agrees that (I) all persons using or servicing the unit or units described therein shall be adequately and thoroughly instructed in the proper use and maintenance of said units and shall be provided with copies of service and maintenance manuals, which shall be readily accessible to said persons at all times, one copy of which shall be kept with the unit, and (ii) the units will at all times be used as directed by MTI in the manuals or elsewhere. Buyers shall require that the agreement in the preceding sentence shall be included in any agreement for the sale or use by other persons of any one or all of the units and/or parts described in this instrument, which agreement shall be written for the benefit of Buyer and MTI alike.
>
> MTI shall in no way be liable for any losses, costs, forfeiture, or damages including loss of profits, liability of Buyer to its customer or third persons, liability of MTI to its customers, employees or third-persons and incidental or consequential damages whether direct or indirect arising from or contributed to by the failure of Buyer to comply with the requirements of the preceding grammatical paragraph, unless due solely to the fault or negligence of MTI, even though there may also have been some contribution thereto by fault or negligence of MTI, its agents, employees and contractor, and Buyer agrees to hold MTI harmless and indemnify

> MTI from any and all claims or causes of action, damages,
> judgments or from whatever other causes, arising in connection
> with the use or maintenance of the units or any of them and arising
> from or contributed by the failure of Buyer to comply adequately
> with the terms of the preceding grammatical paragraph.

(Invoice Terms and Conditions, Exhibit 3 to Response to Motion to Dismiss).

On June 19, 2000, Large, who was an employee of Davis Elliot, was seriously injured when, during the use and operation of the Leased Unit in Virginia, the Leased Unit came into contact with electric lines he was in the process of repairing. As a result of his injuries, Large instituted an action against Mobile Tool and others, for negligent design and/or manufacture, product liability, and breach of express and implied warranties.

On April 7, 2004, Mobile Tool filed a third-party complaint against Davis Elliot, seeking defense and indemnification for the allegations contained in Large's complaint, breach of contract for failure to defend Mobile Tool against Large's allegations, and breach of contract for failure to provide insurance to TECO. Davis Elliot filed a motion to dismiss the third-party complaint. This court issued an order dated February 22, 2005 denying Davis Elliot's motion to dismiss. In this order, a choice of law analysis was conducted and it was held that Virginia law applied to the claims raised by Mobile Tool in Counts I and II of its third-party complaint. (Order at 10). This court further rejected Davis Elliot's argument that Large's claims do not fall within the terms of the lease. (Order at 9).

On April 15, 2005, Mobile Tool filed a motion for summary judgment on Counts I and II based primarily on its prior arguments and on the February 22, 2005 Order. Davis Elliot responded that the motion was premature and that there were fact issues that required discovery. This court then denied Mobile Tool's motion as premature pending more discovery. After

discovery was finally concluded, Mobile Tool requested that its motion for summary judgment on Counts I and II of the third-party complaint be granted. Davis Elliot, in its own motion, sought summary judgment on its entire third-party complaint. After considering the arguments of the parties, and the evidence submitted, the court denied both motions for summary judgment on December 15, 2006.

Eventually, Large settled his claims against Mobile Tool, leaving the third-party complaint against Davis Elliot to be resolved. Due, in part, to changes in Virginia law regarding indemnification, the parties requested and were granted another opportunity to brief the motions for summary judgment on the issue of indemnification.

MTI, in its renewed motion, notes first that the public policy validity of the indemnity provision was what Davis Elliot relied upon in 2006 to defeat MTI's prior motion for summary judgment. MTI claims that since that time the Virginia courts have provided additional guidance on this issue in the cases of <u>Estes Express Lines, Inc. v. Chopper Express, Inc.</u>, 273 Va. 358, 641 S.E.2d 476 (2007) and <u>W.R. Hall, Inc. v. Hampton Roads Sanitation Dist.</u>, 273 Va. 350, 641 S.E.2d 472 (2007). In both of these cases, the Virginia Court held that a party may indemnify itself against losses for which that party's own negligence caused injury, and that such losses did not, as a matter of law, violate public policy. Thus, MTI argues that the only basis for the earlier denial of its summary judgment motion, that there was no proof of meeting of the minds as to the indemnification clause, is no longer relevant and thus summary judgment should be granted.

Davis Elliot's position in the earlier summary judgment motion was that because senior vice president Richard Scott Haskins did not read the contract containing the indemnification provision before signing it, he could not have understood or agreed to the indemnification

8

provision. This court's order of December 2006 denied MTI's motion for summary judgment because it was impossible to conclude, as a matter of law, that Davis Elliot was aware of the indemnification provision and negotiated for such a provision. Thus, under the Virginia law at that time, this genuine issue of material fact precluded summary judgment. See Green v. Sauder Mouldings, Inc., 345 F. Supp. 2d 610, 612 (E.D. Va. 2004)(unilateral agreements indemnifying an entity for personal injuries arising out of that entity's own negligence violate the public policy of the State of Virginia).

However, as MTI argues in its renewed motion, the two factual issues paramount to the earlier denial of summary judgment, awareness and negotiation, are no longer relevant to the issue of whether Davis Elliot owes indemnity to MTI. Rather, Virginia law now squarely holds that if a competent person signs a contract of indemnity they are bound by its terms unless the contract was procured by fraud, duress, mutual mistake, or the signer lacked capacity. MTI points out that Davis Elliot has admitted that Haskins had authority to sign the contract, and Davis Elliot has not pleaded as an affirmative defense fraud, duress, mutual mistake, or lack of capacity. Clearly, pursuant to Virginia law, Davis Elliot owes defense and indemnity regardless of whether Haskins read the contract before he signed it, was aware of the indemnity provision, or negotiated for the indemnity provision. See also Fairfax Co. of Virginia, LLC v. Samson Realty, 74 Va. Cir. 141 (Va. Cir.Ct. 2007)(courts are bound to conclude that the parties intend what their written contracts plainly declare).

Davis Elliot has argued that Estes is distinguishable because in Estes, the injured plaintiff asserted a negligence claim against the indemnitee, whereas the injured plaintiff here asserted a strict product liability claim against MTI. However, the record is clear that Large did in fact

9

assert a negligence claim against MTI. Additionally, the <u>Estes</u> decision does not draw a distinction between personal injury caused by negligence and personal injury caused by a product defect. Rather, <u>Estes</u> holds that reimbursement under an indemnity provision for personal injury is not void as against public policy because indemnity provisions "do not invoke the same public policy concerns as pre-injury release agreements" and "unlike pre-injury release provisions, indemnity provisions do not bar or even diminish an injured party's ability to recover from a tortfeasor." <u>Estes</u>, 273 Va. at 366, 641 S.E.2d at 479-80. <u>Estes</u> also teaches that a contractual provision entitling a party to indemnification for liability incurred as a result of personal injuries caused by the party's own negligence is enforceable by summary judgment.

In its renewed motion, Davis Elliot argues (for the first time) that the terms of the lease invoice do not create an obligation to indemnify for Mobile Tool's negligent design and defective manufacture of the bucket truck. According to Davis Elliot, Mobile Tool is entitled to indemnification if, and only if, liability arises out of supply, placement, or access with regard to the manual for the Bucket Truck and losses resulting from the use or operation of the units.

David Elliot thus argues that construing the document as written and within its four corners, two distinct hurdles must be cleared in order for indemnity to be owed by Davis Elliot. The damages to Mobile Tool must be causally related to some fault on Davis Elliot's part in connection with the service and maintenance manuals, *and* the damages to Mobile Tool must be casually related to the use or operation of the Bucket Truck. Thus Davis Elliot argues that only if liability arises out of *both* of these scenarios, can the argument even be made that indemnity should be afforded to Mobile Tool. Davis Elliot concludes that under the strictly construed terms of the Lease Invoice, Mobile Tool is not entitled to indemnification for its own, pre-occurrence

10

product liability.

In interpreting a contract, the Court looks to the terms of the contract as written, using the language in the agreement. *Pocahontas Mining LLC v. CNX Gas Co., LLC, et al.,* 276 Va. 346, 352, 666 S.E.2d 527, 531 (2008). If no ambiguity is present, the Court will interpret the document from the four corners of the instrument and construe it according to its plain meaning. *Id. Bridgestone/Firestone v. Prince William Square Assocs.*, 250 Va. 402, 407, 463 S.E.2d 661, 664 (1995). Additionally, no word or clause in a contract will be treated as meaningless if a reasonable meaning can be given to it. *D.C. McClain, Inc. v. Arlington County*, 249 Va. 131, 135-36, 452 S.E.2d 659, 662 (1995). If the language of the contact is ambiguous, the document will be construed against the drafter. *Blue Cross of Southwestern Va. V. McDevitt & Street Co.,* 234 Va. 191, 195, 360 S.E.2d 825, 827 (1987) (emphasis added). Therefore, the Court must look to the Lease Invoice, as the plain meaning of the language drafted by Mobile Tool mandates that the Lease Invoice language "shall control over any conflicting provisions in other documents."

Davis Elliot claims that a reading of the provisions at issue shows that Mobile Tool's concern was to insulate itself from liability for Davis Elliot's negligence in connection with failure to educate users and potential users of the contents of the manual. Davis Elliot states that it was not negligent, and in any case, no party has placed Davis Elliot's negligence at issue and thus it cannot be considered by this Court in interpreting the indemnification provisions. According to Davis Elliot, because its negligence is not at issue in this case, there is no set of facts under which Mobile Tool is entitled to indemnification.

Further, neither Large nor Mobile Tool has alleged that liability arose out of Davis Elliot's treatment of the manuals for the Bucket Truck. This alone negates Mobile Tool's

11

indemnity claim due to the fact that the Lease Invoice terms are inclusive of each other.  Davis Elliot maintains that, based upon well established rules of contract interpretation, there is no set of facts under which Mobile Tool would be entitled to indemnification from Davis Elliot for the product liability claims brought against it by Plaintiff Samuel Large.

Mobile Tool, in response, first expresses disbelief that, if paragraph 11 of the Lease Invoice requires a showing of both injury during use and Davis Elliot's misconduct, Davis Elliot would have failed to have raised this argument for the previous seven years of litigation in this action.  Mobile Tool also asserts that the Lease Agreement (at paragraph 3, subsections (a)-(c)) conclusively demonstrates that MTI is entitled to indemnity from both injury from use and from Davis Elliot's violation of the Lease Agreement.  Moreover, paragraph 11 of the Lease Invoice states that Davis Elliot agrees to indemnify MTI "from any and all claims or causes of action, damages, judgments or from whatever cause arising in connection with the use or maintenance of the units or any of them and arising from or contributed by the failure of Buyer to comply adequately with the terms of the preceding grammatical paragraph."  Thus, MTI argues that the clear import of the Lease Agreement and the Invoice is that Davis Elliot's indemnity obligation is broad and covers both injury from use and injury from Davis Elliot's failure to comply with terms of the lease.  This court agrees with MTI that Davis Elliot's new argument is meritless.  As set forth more fully in this court's prior orders, the complaint clearly falls within the Terms and Conditions of the contract which requires Davis Elliot to defend and indemnify Mobile Tool. (See Dec. 15, 2006 Order at 9; Feb.22, 2005 Order at 8-9).

Davis Elliot also makes an attempt to collaterally challenge the settlement between Large and MTI.  However, Virginia law clearly holds that if an indemnitor refuses a request for

contractual defense and indemnity, the indemnitor is estopped from collaterally attacking the amount of the settlement and fees, except on grounds of lack of jurisdiction, fraud, or collusion. Liberty Mutual Ins. v. Eades, 248 Va. 285, 448 S.E.2d 631 (1994). Davis Elliot has not presented any argument or evidence that the settlement was procured by fraud or collusion, or that the court lacked jurisdiction. Although Davis Elliot contends that MTI has not set forth evidence of its fees and expenses, a review of the record shows that MTI submitted the affidavit of Glenn Ison, the adjustor for MTI carrier Great American Insurance Company, who attested to the legal fees and expenses that were actually paid.

In its renewed motion for summary judgment, Davis Elliot has reasserted its argument that it has complied with its duty to provide insurance, and thus it should be granted summary judgment on Count III of Mobile Tool's Third Party Complaint against Davis Elliot. In Count III, Mobile Tool asserts that Davis Elliot is liable for failure to provide insurance as mandated by the Lease Terms and Conditions. Davis Elliot claims that it is undisputed that it secured and maintained liability and automobile insurance in the requisite amounts, and that it named TECO Equipment Leasing Company as an additional insured on its policy. Davis Elliot notes that in its Memorandum in Opposition to Davis Elliot's Motion to Dismiss, Mobile Tool acknowledged that it appeared that Davis Elliot "did, in fact, obtain a one million dollar insurance policy naming TECO, Inc. as an additional named insured. In the event these facts are true and accurate, and insurance coverage is not disputed, Mobile Tool is willing to enter into a stipulation with Davis Elliot to voluntarily dismiss this third claim for relief without prejudice."

This issue of insurance was raised in Davis Elliot's earlier motion for summary judgment. At that time, Mobile Tool stated that it would dismiss the failure to obtain insurance

13

claim when Davis Elliot confirmed that the Royal Insurance Policy is triggered and applicable without reservation to insure Mobile Tool under the contractual indemnification and defense provision. Due to lack of clear briefing on the issue, the court denied the request for summary judgment on Count III in its December 15, 2006 Order.

MTI has not responded at all to Davis Elliot's new request for summary judgment as to Count III. As there are no longer any disputes between the parties regarding the insurance coverage, the court will grant summary judgment in favor of Davis Elliot as to Count III.

<u>Conclusion</u>

On the basis of the foregoing, MTI's renewed motion for summary judgment on its Third Party Complaint (Counts I and II) against Davis Elliot [DE 449] is hereby GRANTED.

Further, Davis Elliot's renewed motion for summary judgment [DE 447] is hereby DENIED, except that with respect to Count III of the Third Party Complaint, Davis Elliot's motion for summary judgment is hereby GRANTED.

Judgment is hereby GRANTED in favor of MTI in the amount of $4,325,903, plus interest.

Entered: June 3, 2009.

s/ William C. Lee<br>
William C. Lee, Judge<br>
United States District Court