UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| SAMUEL R. LARGE, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MOBILE TOOL INTERNATIONAL, et al., )<br>)<br>Defendants. ) | CIVIL NO. 1:02cv177 |

OPINION AND ORDER

This matter is before the court on a motion for sanctions, filed by the third-party plaintiff, Davis H. Elliot ("Elliot"), on January 23, 2008. All work on the motion was suspended pending resolution of the primary case. Thus, briefing on the motion was completed on March 11, 2011. After giving the parties time to pursue settlement negotiations, the could held an evidentiary hearing on the motion on September 14, 2011. On October 14, 2011, both parties filed a post-hearing brief. On October 28, 2011, Elliot filed a responsive brief, and on October 31, 2011, the third-party defendant, Mobile Tool International ("Mobile Tool"), filed a responsive brief.

For the following reasons, the motion for sanctions will be granted in part and denied in part.

Discussion

In an order dated January 7, 2008, this court entered an order granting a motion for sanctions filed by the plaintiff, Samuel R. Large ("Large"), and imposed specific sanctions upon Mobile Tool.[1] On September 15, 2008, while trial preparations were underway, Large settled his

---

[1] The facts of this case have been reiterated in numerous Orders by this Court, and will not be repeated in full here. The Court's January 7, 2008 Order is in the record as Docket Entry 274, and is available electronically via the Court's CM/ECF system.

case, and agreed to dismiss all claims against the Mobile Tool Defendants. However, pursuant to an indemnification agreement with Elliot, Mobile Tool sought indemnity from Elliot.[2] Elliot's motion for sanctions is an outgrowth of the January 7, 2008 order (which imposed sanctions against Mobile Tool). That is, Elliot has taken the position that it should be permitted the opportunity to prove that, but for the sanctions in place against Mobile Tool, the settlement amount would have been much lower. Elliot opined that it should not be required to pay for Mobile Tool's wrongdoing. Consequently, the court permitted Elliot to retain expert witnesses on the issue, and to conduct discovery regarding the effect of the sanctions on the ultimate settlement in this case. The court then held an evidentiary hearing on the issue.

Elliot deposed Mobile Tool's insurance adjusters: (1) Glenn Ison, adjuster for Mobile Tool's primary carrier, Great American; and (2) Timothy McDaniel, adjuster for Mobile Tool's excess carrier, CNA. Elliot also called them to testify at the evidentiary hearing. Mr. Ison testified that the sanctions for spoliation did not cause Great American to offer its primary policy limits. Transcript of Proceedings, dated September 14,2011 (the "Transcript"), at 62:21-22. Likewise, Mr. McDaniel testified that CNA's decision to pay $2.2 million from the excess policy was not based at all on sanctions or spoliation – it was no more or less than it would have been had he faced the same case without any spoliation or sanction issues. Id. at 79:4-80:1.

Elliot presented no witness to identify the amount by which the case value increased because of the sanctions for spoliation. Instead, it presented James Page, a witness who criticized

---

[2] In an order dated June 3, 2009 (the "Indemnity Judgment"), this court held that Elliot breached its obligation to defend and indemnify Mobile Tool against Large's claims, and was ordered to pay Mobile Tool $4,325,903, plus interest. This represents the $3.2 million settlement amount plus, $1,125,903 in fees and costs incurred in Mobile Tool's defense.

2

claims handling practices. Mobile Tool has shown, both at the evidentiary hearing and in its post-hearing briefing, that in forming his opinions, Mr. Page either did not have or ignored several key pieces of information such as (1) Mr. Sellers' post-accident inspection report, prepared on behalf of Elliot, which included a detailed investigation of how the accident happened. Transcript, at 144:9-13; (2) Mr. Dagenhart's July 11, 2008 testimony regarding the "band of arrows" failure to warn liability theory. Id. at 144:14-145:5; (3) Dr. Shafferty's July 14, 2008 letter regarding Mr. Large's steadily worsening medical condition right before trial. Id. at 145:6-10; (4) Mr. Melberg's June 16, 2008 supplemental report regarding Mr. Large's inability to ever return to work. Id. at 145:11-14; (5) Ms. Reavis' June 16, 2008 report. Id. at 146:6-8; (6) the August 5, 2008 Order regarding motions in limine, addressing the scope of the sanctions imposed on Mobile Tool, clarifying that Mobile Tool would be able to present liability experts on issues such as the warnings claim. Id. at 146:9-16; and (7) the September 15, 2008 Order regarding the settlement, finding that it was noncollusive. Id. at 149:13-18.

Mr. Page also admitted he did not have knowledge of numerous settlement demands and offers. Transcript, at 148:1-150:5. Mr. Page admitted: "I'm sure there's a lot I don't have." Id. at 145:14. Mr. Page also admitted that to have an understanding of the case it would be important to know the allegations a plaintiff would make, what theories the plaintiff would promote, and what the defendants would say in response when reaching the value of the case. He testified, "It certainly would be important to have all of that. It would be helpful to have all of that." Id. at 145:17-22. However, it was shown at the evidentiary hearing that Mr. Page did not have all of the information he should have in order to render a proper opinion.

In his opinion, Mr. Page also admitted that the case had millions of dollars of value long

3

before sanctions for spoilation ever existed, including (1) a potential jury verdict value of $2,000,000 as of November 2003; (2)a potential jury verdict value of $5,000,000 as of April 2006; and (3) a settlement value of $1,125,000 as of April 2006. (Opinion Report dated November 14, 2010, at pp. 10-11.) As Mobile Tool has pointed out, Mr. Page believed that if the case went to trial in April 2006, a jury could have awarded $5 million – and notably, Mr. Large's damages and medical condition only worsened two and a half years later, as the case approached trial. Transcript, at 153:15-155:3. According to Mobile Tool, as of January 8, 2008, when sanctions for spoliation were first imposed, Mr. Large still believed he would one day be able to return to work in some capacity and that his medical situation would improve. The parties would later learn he was never going to work again, he was not improving, and he would be able to show the jury substantial additional economic damages at trial than the parties expected in January 2008. But Mr. Page believed the case had millions of dollars of value before the economic value of Mr. Large's wage loss and future medical care dramatically increased.[3]

Somewhat surprisingly to the Court, Mr. Page's report offers no opinion regarding the value of the sanctions order on Mobile Tool's settlement position. In fact, he stated that he was retained to review documents in the case and "offer expert commentary and opine on the appropriateness and reasonableness of the claims handling practices and procedures" of the insurance companies and counsel.[4] (Opinion Report, at p. 1.) This court agrees with Mobile Tool

---

[3] This is significant and sufficiently counters Elliot's argument that Mobile Tool had at least some evidence as early as January 2004, in the form of treating physician opinions, that Large would not be able to return to work as a lineman. (Whether it was then believed that Large could perhaps perform sedentary work at some point is unclear in the record.)

[4] At the evidentiary hearing, Mr. Page recharacterized his job as "to analyze the nature of the spoilation and sanctions as they affect the resolution of this case, looking at historically the

4

that Mr. Page's report comes nowhere near a determination or conclusion that Mobile Tool overpaid because of sanctions against it. Rather Mr. Page simply claimed that, "[a]t the very latest, [Mobile Tool's carrier] should have realized the value of this claim and the exposure to them by 4/10/2006." <u>Id</u>. at p. 11. That is, Mr. Page believed the value of the claim was clear – and was well into the seven figure range – almost two years before sanctions were even imposed. So, according to Elliot's own expert's report, sanctions had nothing to do with the case value.

However, at the hearing, Mr. Page testified that "the spoliation decision and the sanctions…have a very significant and devastating impact with respect to the defensibility of the case." <u>Id</u>. at 133:11-20. Yet, he also recognized that the spoliation decision and sanctions "do not have a specific monetary value to them." <u>Id</u>. Clearly, though, the spoliation order and accompanying sanctions were first imposed on January 8, 2008, and Mr. Page believed the case had a multi-million dollar settlement value long before that, in 2006. The only rational conclusion is that the case had millions of dollars worth of value even without the spoliation decision and sanctions, and thus there is no basis to reduce the award against Elliot.

Although Mobile Tool does not bear the burden of proof on the issue before the court, Mobile Tool presented witnesses at the evidentiary hearing. Great American's adjuster, Glenn Ison, who has forty-one years of experience in insurance adjustment, has consistently testified that from his perspective the spoliation issues and sanctions against Mobile Tool did not increase the case's settlement value. Transcript of the Deposition of Glenn Ison, dated October 13, 2010, at 46:6-23; 48:10-17; 49:7-13; 50:6-16; and 78:9 – 79:9; Transcript, at 62:21-4. Mr. Ison was primarily concerned about a lack of evidence that the boom's end cap was installed prior to it

---

impact of those issues on the value and the resolution of the case". Transcript, at 124:24-125:5.

5

leaving Mobile Tool's possession; i.e., a manufacturing defect. Ison Dep., at 93:17 – 94:23; Exhibit 2, Transcript, at 63:14-24.

Likewise, CNA adjuster Timothy McDaniel has consistently testified that the sanctions imposed on Mobile Tool for spoliation of evidence did not affect his assessment of overall settlement value. Transcript of the Deposition of Timothy R. McDaniel, dated October 13, 2010, at 31:2 – 33:1; 36:9 – 37:16; Transcript, at 79:4-80:1. Nor do such orders typically impact Mr. McDaniel's analysis of valuation in other cases he has handled, though it depends on the type of sanction and the facts of the case. McDaniel Dep., at 33:16 – 36:1. Mr. McDaniel has also testified that Mr. Large's product liability case involved claims of both design defect and failure to warn, theories that were not impacted by the spoliation and sanctions issues. Id. at 28:3-13. From a liability perspective, Mr. McDaniel was most concerned about Mr. Large's failure to warn claim, based on Mr. Large's "band of arrows" theory. Transcript, at 82:18-86:13. Nothing about this theory or Mobile Tool's ability to defend against it was impacted by the spoliation or sanctions: everyone knew what warnings were or were not on the truck. Id. at 85:11-15.

Mr. Ison has consistently testified the case value was driven by medical costs, the permanent nature of Mr. Large's injuries, and damages for Mr. Large's pain and suffering and wage loss. As Mobile Tool points out, the lack of a boom and liability issues around the boom did not affect these value drivers. Ison Dep., at 53:2-24; 78:18 – 79:9; and 81:5-17; Transcript, at 63:4-13. Moreover, the scope of damages increased over time due to Mr. Large having additional surgeries, and from gaining more clarity regarding his wage loss claim. Ison Dep., at 85:14-25.

Similarly, Mr. McDaniel believed the fact that Mr. Large could not go back to work,

paired with a relatively long period of work-life, affected the case's value. McDaniel Dep., at 28:9-20; Transcript, at 80:2-10 and 81:4-20. The settlement value was also increased by Mr. Large's worsening medical condition and greatly increasing medical costs as the case approached trial in the summer of 2008, arising in part from ineffective surgical procedures. McDaniel Dep., at 61:9 – 62:10; Transcript, at 81:10-81:2 and 81:21-17.

Therefore, not only do Elliot's witnesses fail to support the theory that the settlement was impacted by the sanctions imposed, Mobile Tool's witnesses also show that the sanctions in this case were not relevant to the value of the settlement that was finally reached in this case. Accordingly, the court will not reduce the amount of the Indemnity Judgment related to the required indemnification of the Large settlement.

The remaining point of contention is the amount of fees and costs Elliot is required to pay. Mobile Tool has acknowledged that Elliot should not have to pay fees and costs related to spoliations/sanctions activity, which the parties have agreed amounts to $94,619.51. Not content with this amount, Elliot has undertaken an analysis of <u>all</u> the costs and fees incurred in defending against Large's claim, and argues that the Indemnity Judgment should be reduced by $757,987.39 which Elliot claims represents unreasonable costs and fees. However, as Mobile Tool has repeatedly pointed out, Elliot has been permitted to challenge fees and costs only insofar as they relate to sanctions and spoliation activity.[5] According to Ms. Hawke, Elliot's

---

[5] Surprisingly, Elliot has taken the position that it was unable to contest the amount of fees and costs at the time the motion for summary judgment on the issue of indemnification was pending, and thus it should now be able to contest all of the fees and costs incurred by Mobile Tool in defending the case. This court addressed Elliot's argument in its Indemnity Judgment wherein it was held that: "Although Davis Elliot contends that MTI has not set forth evidence of its fees and expenses, a review of the record shows that MTI submitted the affidavit of Glenn Ison, the adjustor for MTI carrier Great American Insurance Company, who attested to the legal

own expert witness on this issue, Mobile Tool incurred $94,619.51 in fees and costs to litigate spoliation and sanction issues. Mobile Tool is in agreement on this point. Therefore, the court will reduce the award set forth in the Indemnity Judgment by the amount of $94,619.51.

Elliot raises several questions relating to interest on the judgment. Elliot acknowledges that post-judgment interest is mandatory, but asserts that it is discretionary with the court whether to award pre-judgment interest. Elliot also argues that post-judgment interest should begin to run on June 3, 2009 (the date the Indemnity Judgment was entered), thereby limiting pre-judgment interest from the date of the settlement (September 15, 2008) to the date the Indemnity Judgment was entered. It is clear that Elliot is attempting to limit its exposure to the higher pre-judgment interest rate.

With the entry of this order resolving the last of the claims in this case, a final judgment will finally be entered. At that point the parties can begin litigating, if necessary, the issues arising from pre- and post-judgment calculations. The parties are urged to resolve these issues on their own, but if unable to do so, should present them by way of a motion which may then be briefed out in the usual fashion.

## Conclusion

On the basis of the foregoing, Davis Elliot's Motion for Sanctions [DE 281] is hereby GRANTED IN PART AND DENIED IN PART. The indemnity judgment entered on June 3,

---

fees and expenses that were actually paid." Order dated June 3, 2009, at p. 13.

2009 [DE 456] , is hereby MODIFIED AND REDUCED by $94,619.51, to a new total judgment of $4,231,283.49.

Entered: November 22, 2011.

s/ William C. Lee  
William C. Lee, Judge  
United States District Court